Lloyd **HUGHES**, Appellant,

v.

**NORTH DAKOTA CRIME VICTIMS REPARATIONS BOARD**, Appellee.

Civ. No. 9246.

Supreme Court of North Dakota.

Nov. 6, 1976.

Daniel E. Buchanan, Jamestown, for appellant.

Richard J. Gross, Executive Director, Crime Victims Reparations Bd., Bismarck, for appellee.

PEDERSON, Justice.

This appeal presents two questions of first impression for this Court:

(1) Did the North Dakota Legislature, in enacting the Uniform Crime Victims Reparations Act (Chapter 65–13, North Dakota Century Code), intend that appeals from decisions of the Crime Victims Reparations Board would be taken directly to the Supreme Court?

(2) Did the Legislature intend to compensate an individual who is eligible under the Uniform Crime Victims Reparations Act for lost wages resulting from his absence from work while testifying against his assailant?

Appellant Lloyd Hughes was assaulted in his own home on August 19, 1975, suffered personal injury, and lost three days' wages, totaling $185.00, while later testifying in court against his assailant. Hughes was treated for his injuries in the emergency room at the Jamestown Hospital, where his expenses were covered by insurance and thus are not involved in this case by virtue of § 65–13–06(6)(a), NDCC. He filed a claim for the lost wages pursuant to § 65–13–06, NDCC, and this was subsequently denied by the Board. On appeal to the district court of Stutsman County, the court concluded that the Act provided for direct appeal to the Supreme Court from decisions of the Board, and dismissed the action for lack of jurisdiction.

Hughes then filed this appeal in which he asserts error by the district court and the

Board. We affirm the district court's dismissal of his appeal to that court for lack of jurisdiction, and affirm the Board's denial of his original claim.

■ The Uniform Crime Victims Reparations Board is an administrative agency and, as such, appeals from its decisions would normally be governed by Chapter 28–32, NDCC, which contemplates appeal to the district court from administrative decisions. Section 28–32–15, NDCC. However, the Legislature, in this instance, has clearly defined the appellate procedure within the Act itself. Subsection 3 of Section 65–13–17, NDCC, provides:

"A final decision of the board is subject to judicial review on appeal by the claimant, the attorney general, or the offender in the same manner and to the same extent as a decision of the district court."

We cannot ignore this explicit language in order to speculate as to the reasons why the Legislature sought to prevent the application of the appellate procedure established by Chapter 28–32, NDCC. Appeals from decisions of the Board, under this specific language, lie directly to the Supreme Court, and we thus affirm the district court's dismissal of the appeal for lack of jurisdiction. Although there were no findings, conclusions, or determination by the Board in this case, there is no dispute as to facts and the parties agree that there is only an issue of law. We accordingly determine that it is in the public interest that we decide the case on its merits rather than to remand for compliance with Section 65–13–09(5), NDCC.

Hughes contends on appeal that the Act provides for compensation for wages lost as a result of the victim's absence from work while testifying against the criminal offender. Under the Act, a crime victim may receive reparations for economic loss arising from "criminally injurious conduct." Section 65–13–04, NDCC. Economic loss includes allowable expense, work loss, replacement service loss, and, if injury causes death, dependent's economic loss and dependent's replacement service loss. Section 65–13–03(6), NDCC.

Subsection (6)(b) of Section 65–13–03, NDCC, further defines work loss:

" 'Work loss' means loss of income from work the injured person would have performed if he had not been injured * * *."

Hughes urges this Court to adopt a liberal construction of this section of the statute. Section 1–02–39, NDCC, states:

"*If a statute is ambiguous*, the court, in determining the intention of the legislation, may consider among other matters:

"1. The object sought to be attained.

\*    \*    \*    \*    \*    \*

"5. The consequences of a particular construction.

\*    \*    \*    \*    \*    \*

"7. The preamble." [Emphasis added.]

*Accord, Kottsick v. Carlson*, 241 N.W.2d 842, 845 (N.D.1976); *Saetz v. Heiser*, 240 N.W.2d 67, 71–72 (N.D.1976).

■ It is significant to note that only if a statute is ambiguous are we permitted to explore into the legislative object, the consequences, and the preamble. Hughes' argument rests primarily upon the contention that the object of the Legislature to compensate victims and to promote the efficacy of law enforcement would be thwarted by a strict construction. That may well be, but when the Legislature uses such explicit terms as it did in Section 65–13–03(6)(b), we are not permitted to declare the language ambiguous and apply Section 1–02–39 on the pretext of determining intent.

Claimant argues that there is ambiguity in that Section 65–13–02 provides for compensation for expenses resulting from the criminal act as opposed to expenses which result from the injury as stated in Section 65–13–03(6)(b). Section 65–13–02 states:

"It is the intent of the legislative assembly of this state to provide a method of compensating and assisting those persons within the state who are innocent victims of criminal acts and who suffer bodily injury or death. To this end, it is the legislative assembly's intention to

provide compensation in the amount of expenses actually suffered as a direct result of the criminal acts of other persons."

■ This can be read to agree with or contradict the provision of Section 65–13–03(6)(b), NDCC. We know of no precedent for holding that the Legislature may, in an expression of intent, contradict what it has clearly expressed as the law of this State. Accordingly, we hold that only wages lost because of injury, not those lost because of a need to appear and testify, are compensable under the Act.[1] The order of the Board is affirmed.

■ Under the provisions of Section 65–13–13, NDCC, we conclude that neither Hughes' claim nor appeal is frivolous and that he is entitled to an award of reasonable attorney fees from the Board and from this Court. The record does not show, but we were advised during argument, that the Board had awarded attorney fees of $142.50. Counsel filed an itemized statement showing that he expended 60.85 hours in performing services necessarily required in representing Hughes on the appeal of this case and that he necessarily incurred $139.77 in costs and expenses. In *Baer v. O'Keefe*, 235 N.W.2d 885 (N.D.1975), we said that a very similar affidavit lacked specificity.

If court-awarded attorney fees are to be based primarily upon time spent in preparation, the result would be that the most competent, experienced lawyer would receive the lowest award. In *United Development Corp. v. State Highway Dept.*, 133 N.W.2d 439, 446 (N.D.1965), we said that "various factors are to be considered in arriving at a reasonable attorney's fee, including the amount and the character of the services rendered, the results obtained, the customary charge for the services rendered, and the ability and skill of the attorney." In both cases titled *Morton County Board of Park Com'rs v. Wetsch*, 136 N.W.2d 158 (N.D.1965), and 142 N.W.2d 751 (N.D.1966), we indicated that all relevant factors should be considered in fixing reasonable attorney fees.

These cases illustrate that the fee should not be based on any one single factor and, in *Municipal Airport Auth. of City of Fargo v. Stockman*, 198 N.W.2d 212, 215 (N.D. 1972), we itemized the necessary factors, standards, elements and guidelines as follows:

"(1) Character of the services;

"(2) The results obtained;

"(3) The customary fee;

"(4) The ability and skill;

"(5) Careful, conscientious and capable manner—customary fee—contingent fee contract—ability and skill."

We find that guidelines for determination of reasonable attorney fees are contained in Disciplinary Rule DR 2–106 and in Ethical Consideration EC 2–18, adopted by this Court as a part of the Code of Professional Responsibility.

■ Because we believe them to be more readily applicable, we adopt the following guidelines from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) time and labor required (distinguishing between legal work in the strict sense, and investigation, clerical work, and compilation of facts and statistics); (2) the novelty and difficulty of the questions (he should not be penalized for accepting a challenge which may result in making new law); (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Considering the above twelve factors to the extent that we have before us the nec-

---

1. Hughes' testimony would have been required even if he had not been injured.

essary information, and particularly in addition to time expended, the novelty and difficulty of the question, and the comparatively small amount involved, we conclude that a reasonable fee is $1,250.00, and we award that sum to Hughes as attorney fees on appeal.

The order of the trial court and the order of the Crime Victims Reparations Board are affirmed. Because a public question is involved, there will be no costs allowed on the appeal.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VOGEL, Justice (dissenting).

I dissent from the denial of reparation to Hughes for his unquestioned loss of three days' pay while testifying against his assailant.

We are not here concerned with an ordinary criminal case or a tort action for damages, in both of which a victim is not allowed to recover compensation for the time taken from work to testify in his own behalf (although in the criminal case he would receive witness fees). We have, instead, a completely new remedy created by a special statute which provides that persons who are the victims of "criminally injurious conduct" may recover for certain economic losses including "work loss," which is defined to include "loss of income from work the injured person would have performed if he had not been injured, . ." [Sec. 65–13–03, subsec. 6–b, N.D.C.C.]

It seems to me that that statute plainly requires payment to Hughes. If Hughes had not been injured he would have worked on the three days in question. His loss of pay for those three days was caused by "criminally injurious conduct" and resulted in "loss of income from work the injured person would have performed if he had not been injured, . . ."

The majority opinion, after holding the language of the statute unambiguous and denying any intention to interpret it, proceeds to interpret it to say just the opposite of what (to me, at least) it says.

The majority opinion fails to explain how the "explicit terms" of Section 65–13–03, subsection 6–b, defining "work loss," compel, or even permit, the result reached.[1]

Permitting the victim to be paid for time lost while testifying against his assailant may be novel, unsettling, or even unprecedented, but if the language of the statute permits it, I cannot agree to an opinion holding just the opposite.

In the absence of any explanation or analysis to justify upsetting the plain application of an unambiguous statute to undisputed facts, I dissent.

---

1. The footnote in the majority opinion to the effect that Hughes would have been required to testify even if he had not been injured does not explain the holding. If he had not been injured he would not have presented a claim, since he would have been specifically excluded from compensation for "work loss" by the definition that such loss is "loss of income from work the *injured* person would have performed if he had not been *injured*, . . ." [Emphasis added.] Sec. 65–13–03, subsec. 6–b, quoted in part above. It is the fact of injury which invokes the "work loss" provision.