CITY OF BISMARCK, a Municipal Corporation, Plaintiff and Appellant,

v.

Harley B. THOM and Helen R. Thom, husband and wife, Defendants and Appellees,

and

Dakota National Bank of Bismarck, a corporation, Defendant.

Civ. No. 9362.

Supreme Court of North Dakota.

Dec. 19, 1977.

Daniel J. Chapman, Sp. Counsel for the City of Bismarck, Bismarck, for plaintiff and appellant.

Sperry & Schultz, Bismarck, for defendants and appellees; argued by Floyd B. Sperry, Bismarck.

SAND, Justice (on reassignment).

This is an appeal from that portion of the judgment issued by the Burleigh County District Court allowing costs and attorney fees to the landowners in an eminent domain action.

The award was made pursuant to § 32–15–32, North Dakota Century Code, which provides:

"The court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include interest from the time of taking except interest on the amount of a deposit which is available for withdrawal without prejudice to right of appeal, costs on appeal, and reasonable attorney's fees for all judicial proceedings. If the defendant appeals and does not prevail, the costs on appeal may be taxed against him. In all cases when a new trial has been granted upon the application of the defendant and he has failed upon such trial to obtain greater compensation than was allowed him upon the first trial, the costs of such new trial shall be taxed against him."

The City of Bismarck offered the defendants $150,000.00 for land needed for airport expansion. The landowners declined to accept the offer. An eminent domain action was commenced and, after further negotiations and pretrial proceedings, was tried to a jury, which awarded compensation of $363,640.00. No appeal was taken from this award. Proceedings were then commenced to fix the attorney fees due the landowners. The attorneys chosen by the landowners

had previously contracted with them for a contingent fee of one-third of the amount recovered over and above the original offer of $150,000.00. As between the attorneys and the clients, therefore, the fee due was $71,213.33.

The trial court found the fee of $71,-213.13 * to be fair and reasonable and ordered the City to pay it, along with certain other costs, including fees of expert witnesses. The City appealed, but only from the allowance of attorney fees of $71,213.13 and from certain fees allowed expert witnesses in the amount of $6,327.00 for pretrial preparation and from fees for a son of one of the expert witnesses, who did not testify as to value but did testify as to collateral matters.

The City of Bismarck contends that the trial court erred by not utilizing the factors previously announced by this Court in determining reasonable attorney fees, but instead relied principally upon the one-third contingency fee contract between the attorneys and the landowners, and therefore abused its discretion. The City of Bismarck further contends that the trial court abused its discretion in allowing expert witness fees for a witness who did not testify.

A brief review of North Dakota case law discloses that this Court, in *United Development Corporation v. State Highway Department*, 133 N.W.2d 439 (N.D.1965), and in *Morton County Board of Park Commissioners v. Wetsch* (first case), 136 N.W.2d 158 (N.D.1965), in opinions written by Justice Strutz, outlined the following stan-dards, guidelines, and factors to be considered in allowing reasonable attorney fees in eminent domain proceedings:

"In arriving at what is a reasonable attorney fee in each case, the court should consider the character of the services rendered by the attorney, the results which the attorney obtained for his client, the *customary fee charged* for such services, and the ability and skill of the attorney rendering the services. The fee should not be based on any one single factor, but all of these matters should be

taken into consideration. The only requirement is that the fee which the court fixes in each case must be reasonable for the services rendered. Thus the fee which the trial court determines to be the reasonable fee in any given case may be less than the amount which would be due on a contingent-fee contract, and in some cases it may be more than such fee would amount to. . . .

"In the case before us, the court arrived at the amount of the attorney's fee to be awarded solely on the basis of the contingent-fee contract." 136 N.W.2d 158, 159. [Emphasis ours.]

These factors were either restated or reaffirmed and followed in *Morton County Board of Park Commissioners v. Wetsch* (second case), 142 N.W.2d 751 (N.D.1966); *Municipal Airport Authority of City of Fargo v. Stockman*, 198 N.W.2d 212 (N.D.1972), and *Sauvageau v. Hjelle*, 213 N.W.2d 381 (N.D.1973).

In the *United Development Corporation* case, attorney fees were allowed on a contingent-fee arrangement which approximated 15% of the recovery, and in the *Wetsch, Stockman,* and *Sauvageau* cases, attorney fees were approved which were the equivalent of one-third of the contingency fee arrangement.

We are also aware that in the *Stockman* case, *supra* at 215, the court erroneously included "contingent fee" in item (5) as a standard, factor, element, and guideline in determining reasonable attorney fees. We think what was meant to be was the term "customary" fee.

It is also possible that the use of the term "customary fee charged" in the earlier opinions may have left an erroneous impression. The term "customary fee charged" was first used in the opinions written by Justice Strutz in the *United Development Corporation* and *Wetsch* (first) cases. With this in mind we note Justice Strutz' special concurring opinion in *Stockman* in which he emphasized that even though the fee approved

* The 20-cent error is in the judgment.

in that case was the same as would be produced on a one-third contingency fee basis it was not derived by relying on the one-third contingency fee, which would have been improper. He said:

"However, while such contingent-fee arrangements may be perfectly valid and proper as between an attorney and his clients, it does not necessarily follow that such fee is a reasonable fee to be taxed against the party taking private property for a public use, as permitted under Section 32–15–32, North Dakota Century Code." *Stockman, supra,* at 217.

He also, in substance, stated that the fee is reasonable because of the character of the services rendered, the results obtained, the *customary charges,* and the ability and skill of the attorney rendering the services, but not because it is a fee permitted to be charged under the contingency fee arrangement.

From this it becomes eminently clear that Justice Strutz, in using the term "*customary fee charged*" did not intend the term to include the contingency fee arrangement.

█ We believe the term "customary fee charged" has reference to the hourly rate or its equivalent rather than a contingency fee arrangement.

█ Contingency fee arrangements in their usual sense have no application under § 32–15–32, NDCC, because reasonable attorney fees are not governed by the amount recovered in excess of the amount offered from which the appeal was taken. To the contrary, under § 32–15–32, NDCC, once the recovery is greater than the amount offered from which the appeal is taken reasonable attorney fees are allowable without regard to the amount recovered in excess of the offer. If contingency fees were accepted or relied upon in allowing attorney fees under § 32–15–32, NDCC, who would determine what percentage would be proper— one-tenth, one-fourth, one-third, or one-half? In this respect we should note that under § 32–15–32, NDCC, where the fee is in addition to the award, no safeguard or incentive exists for the landowner to arrange for reasonable attorney fees as would

be the case if the fee were paid by the landowner out of the award or recovery.

Even though the principles of law, factors, standards, and guidelines outlined by this Court in the foregoing eminent domain cases in determining reasonable attorney fees are clear and not very difficult, we nevertheless can understand that because the Court in those cases approved attorney fees which were the equivalent of the contingency fee arrangement that an erroneous impression was left that in determining reasonable attorney fees the contingency fee arrangement could be considered in determining what are reasonable attorney fees.

"The fee should not be based on any one single factor, but all of these matters should be taken into consideration. The only requirement is that the fee which the court fixes in each case must be reasonable for the services rendered." *Municipal Airport Authority of City of Fargo v. Stockman,* 198 N.W.2d 212, 215.

The foregoing illustrates the need to refine and redefine the factors, standards, elements, and guidelines to be employed in determining reasonable attorney fees.

Before doing so we will first examine other statutes allowing attorney fees.

Reasonable attorney fees are allowed in antitrust actions brought under 15 U.S.C.A. § 15. A brief review of some of the decisions will be of assistance.

The United States Court of Appeals, in *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir. 1977), in a case involving attorney fees, said:

"The purpose of the equitable fee award was expressly stated as the 'compensa[tion of] the attorney for the reasonable value of services benefiting the . . . claimant.' 495 F.2d at 470 quoting *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161, 167 (3rd Cir. 1973). We directed the district court to begin its inquiry on remand by first calculating the basic value of appellee's services. This was to be derived by multiplying the numbers of

hours expended by each attorney involved in each type of work on the case by the hourly rate normally charged for similar work by attorneys of like skill in the area. Once this base or 'lodestar' rate was established, other less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys, could be introduced to determine a final fee amount. But we specifically directed that the district court articulate with particularity those aspects of appellee's efforts which might lead it to increase compensation above the base rate."

In *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 470 (2d Cir. 1974), the Court listed several parameters that affect the value of legal services, such as:

"(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government,

(2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel,

(3) time and labor spent,

(4) the magnitude and complexity of the litigation,

(5) responsibility undertaken,

(6) the amount recovered,

(7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial,

(8) what it would be reasonable for counsel to charge a victorious plaintiff."

The Court continued by saying:

"As the Third Circuit [court] has recently pointed out in *Lindy Bros., supra* [*Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation*, 487 F.2d 161 (1973)], more is needed than a mere listing of factors. Such a list, standing alone, can never provide meaningful guidance.

"The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts."

The Court, in *Detroit v. Grinnell, supra*, 495 F.2d at 471, continued by saying:

"Once the District Court ascertains the number of hours that the attorney and his firm spent on the case, it must attempt to value that time. Valuation obviously requires some fairly definite information as to the way in which that time was spent (discovery, oral argument, negotiation, etc.) and by whom (senior partners, junior partners or associates). Once this information is obtained the easiest way for the court to compute value is to multiply the number of hours that each lawyer worked on the case by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation.

. . . . .

"We are not under the illusion that a 'just and adequate' fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.

"Perhaps the foremost of these factors is the attorney's 'risk of litigation,' *i. e.*, the fact that, despite the most vigorous and competent of efforts, success is never guaranteed. The greater the probability of success, of either ultimate victory on the merits or of settlement, the less this consideration should serve to amplify the basic hourly fee. The tangible factors which comprise the 'risk of litigation' might be determined by asking the following questions: has a relevant government action been instituted or, perhaps, even successfully concluded against the

defendant; have related civil actions already been instituted by others; and, are the issues novel and complex or straightforward and well worn? Thus determined, the litigation risk factor might well be translated into mathematical terms.

"It may be argued that by minimizing the important role traditionally played by the magnitude of the recovery, there will be considerably less incentive for the class attorney, particularly when negotiating a settlement, to seek as high a recovery as possible. Conversely, it can be complained that such a rule will encourage counsel to avoid quick settlement or, indeed, any settlement, in hopes of prolonging the proceedings and accumulating billable hours. Although there may be some truth in these arguments, we feel that their impact can be minimized by an intensified scrutiny on the part of the court which must approve each negotiated settlement.

"When it sets a monetary value on a lawyer's services, the District Court must be in possession of an enormous amount of information. It must know how much each contributing lawyer devoted to each task resulting in the formation of the settlement fund; it must be aware of the billing rate properly applied to each of these manhours; and it must be sensitive to those factors, tangible and intangible, which comprise the 'risk of litigation.'"

These items should also be applied in eminent domain proceedings even though there is some difference between antitrust actions and condemnation proceedings.

In *Gossner v. Cache Valley Dairy Association*, 307 F.Supp. 1090 (D.Utah, N.D.1970), the defendant in an antitrust action claimed that the fee should not exceed the one-third contingency arrangement between the plaintiff and his attorney. The jury returned a verdict of $30,000.00 for the plaintiff, and under the antitrust Act this amount was trebled, making a recovery of $90,000.00. The court allowed $42,500.00 as the reasonable attorney fee for services for plaintiff's attorney. The defendant, however, contended that the attorney fee should be limited to $30,000.00, on the basis that the plaintiff and his attorney had a contingent fee arrangement of one-third. The court concluded otherwise, and said:

"No case has been cited, nor has the court discovered one which squarely holds that a contingent fee arrangement may restrict the plaintiff to the recovery of less than a reasonable fee; but I believe this must be the law; the statute authorizes an attorney's fee, not a litigant's fee."

In *Baer v. O'Keefe*, 235 N.W.2d 885 (N.D. 1975), this Court had under consideration reasonable attorney fees allowed in a criminal case under § 29–07–01.1, NDCC, the pertinent part of which provides as follows:

"Lawyers appointed to represent needy persons shall be compensated at a reasonable rate to be determined by the court. . . ."

An itemization of time spent on the case was submitted by the appointed attorney. The trial court reduced the amount asked for. In resolving this case we said:

". . . taking into consideration the limits which the federal law has placed on the allowance of fees and costs and the fact that approval was not secured prior to the employment of the investigator, that almost all of the attorney's time was spent in preparation rather than in the actual trial of the case, and that the itemization of time spent in research and conferences lacked specificity, we conclude that the trial court's reduction of the fees and costs was reasonable and that the fees and costs that he permitted were reasonable. Applying the National College's category (2) we find no abuse of discretion. Accordingly, the demand for the supervisory writ is hereby denied." *Baer v. O'Keefe*, 235 N.W.2d 885, 891.

■ We conclude that a reasonable fee in certain instances may be in excess of what a one-third contingency fee would produce, or it may be less. It is the reasonableness of the fee, and not the arrangement the attorney and his client may have agreed upon, which is controlling whenever the fee

is to be assessed and included in the judgment, as is provided for in § 32–15–32, NDCC.

In *Hughes v. North Dakota Crime Victims Reparations Board*, 246 N.W.2d 774, 777 (N.D.1976), we had under consideration the question of reasonable attorney fees, and adopted the following guidelines from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974): (1) the time and labor required on legal work as distinguished from clerical and investigation; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent *but only as it may be helpful in demonstrating the attorney's expectations* (see *Clark v. American Marine Corp.*, 320 F.Supp. 709 (E.D.La.1970), where the court said the criterion for the court is not what the parties agreed but what is reasonable); (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of professional relationship with the client; and (12) awards in similar cases.

■ In *Hughes*, at 777, we also observed that guidelines for determination of reasonable attorney fees are contained in Disciplinary Rule DR 2–106, and in ethical consideration EC 2–18 adopted by this Court as part of the Code of Professional Responsibility. However, those guidelines apply between attorney and client and have no relation to the determination of reasonable attorney fees under the statute in question.

■ We conclude, after reviewing all of the foregoing and related cases, that in determining a reasonable fee the trial judge must first determine the number of hours expended. Whenever possible his findings should be made upon contemporaneous records, and when such records are not available, then upon reasonable reconstruction or estimates of time amounts. The trial judge must then assign specific hourly rates based upon the attorney's experience and reputation which will constitute the "lodestar." The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney.

■ The trial court or judge should also consider the character of the services rendered, the results which the attorney obtained, and the customary fee charged in the locality for such services, as well as the ability and skill of the attorney. The court should not rely on any single item in determining reasonable attorney fees. The number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees.

We recognize that it is virtually impossible to set out every conceivable item that should be considered, and for this reason we do not attempt to do so. However, if the trial judge finds justification or reason to include something else of significance he should state those reasons and justifications for the inclusion in his ultimate determination.

We do not question the expertise of the trial court in determining what is a reasonable fee, but even so this does not mean that evidence or specific findings can be dispensed with. Recognizing the expertise of the trial court basically eliminates the necessity of obtaining testimony from expert witnesses.

The appealability of awards for attorney fees was obliquely raised, because *State ex rel. Olson v. Nelson*, 222 N.W.2d 383 (N.D. 1974), concluded that an order awarding attorney fees and costs relative to pretrial discovery procedures was interlocutory in nature and was not appealable. This may have left an erroneous impression that all orders awarding attorney fees are not appealable. In the instant case the appeal was from the judgment, which included the award for attorney fees; whereas in the *Nelson* case there was no appeal from the judgment, but merely from an interlocutory order.

On appeal, whether we review the reasonableness of attorney fees pursuant to Rule 52 of the North Dakota Rules of Civil Procedure or under the abuse-of-discretion concept, facts are necessary. Where no evidence was introduced and where the trial court made no specific findings of fact to support its determination on attorney fees, it is impossible for this Court on appeal to appropriately review the decision (determination) of the trial court.

After having examined and reviewed the record, we are convinced that the trial court erroneously relied upon the one-third contingency fee arrangement in awarding the attorney fees.

We now consider the question whether or not the award of $6,327.00 for expert witness fees was proper. These fees were allowed for pretrial preparation and the attendance of William Knudson, the son of D. W. Knudson, one of the expert witnesses for the landowners. The fees allowed by the court were pursuant to § 32–15–32, NDCC. The court disallowed a claim for two days' attendance in court.

William Knudson did much of the pretrial investigation of comparable sales of the land taken in preparation of the trial. He made the pretrial investigation which would have been required by someone else, and probably at a higher per diem rate.

The trial court determined that the fee allowed was appropriate and that William Knudson was an expert witness and was entitled to be compensated as such.

The determination of which witnesses are experts and which witnesses are necessary at the trial, and the amount of fees, are matters appropriately left to the discretion of the trial court. *Schue v. Jacoby,* 162 N.W.2d 377 (N.D.1968), and *United Development Corporation v. State Highway Department, supra.* We find no abuse of that discretion in the allowance of expert witness fees.

Accordingly, we affirm the award of expert witness fees and reverse the judgment awarding attorney fees, and remand the matter to the trial court for an evidentiary hearing and the determination of reasonable attorney fees in conformity with this opinion.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice, dissenting.

I dissent. The majority, in the guise of applying the law of previous cases, is reversing those cases and making new law, which I think is bad law. The purpose of the statute allowing attorney fees in eminent-domain actions was to make certain that the landowner received the full "just compensation" for his land, without diminution by attorney fees. The majority opinion will leave landowners with less than just compensation.

The trial court in the present case did precisely what it was instructed to do by our previous cases. It considered all the "standards, guidelines, and factors to be considered" set out in *United Development Corporation v. State Highway Department,* 133 N.W.2d 439 (N.D.1965); *Morton County Board of Park Commissioners v. Wetsch* [first case], 136 N.W.2d 158 (N.D.1965); *Morton County Board of Park Commissioners v. Wetsch* [second case], 142 N.W.2d 751 (N.D.1966); *Municipal Airport Authority of the City of Fargo v. Stockman,* 198 N.W.2d 212 (N.D.1972); and *Sauvageau v. Hjelle,* 213 N.W.2d 381 (N.D.1973). Those cases require the trial court to consider "the character of the services rendered by the attorney, the results which the attorney obtained for his client, the customary fee charged for such services, and the ability and skill of the attorney rendering the services."

The trial court in the case now before us held that the fee of $71,213.13 "is a reasonable and proper fee in the light of the litigation, the preparation therefor, the skill of the presentation, the results obtained, and the diligence shown by counsel for the defendant owners." It mentioned, also in the memorandum opinion, that counsel for the defendants "handled the testimony of the expert witness of the plaintiff with skill and dexterity based upon the pretrial work

they had accomplished in the case."[1] In the court's order it stated that it had "been shown to the Court that counsel for the defendants entered into a contingent fee contract, providing for one-third of the increase, between the original offer and the verdict of the jury, the contingent fee contract being the kind in general use in North Dakota in similar cases, . . ." and that the jury verdict in the case caused a settlement to be made in another case involving the City of Bismarck.

The majority of this court now reverses the holdings of those prior cases, tells the trial court that it considered the wrong elements, and sets up new standards to be followed in the future in similar cases. The majority now holds that the trial judge must "assign specific hourly rates based upon the attorney's experience and reputation" which "can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney." This is new, and it effectively reverses all of our prior cases on the subject, and will deprive some landowners of part of the just compensation to which they are entitled.

I disagree with those parts of the majority opinion which say that in *Stockman, supra,* the court "erroneously included 'contingent fee' . . . as a standard, factor, element, and guideline in determining reasonable attorney fees." The court in that case, and in all other cases, properly considered the contingent fee, as I will demonstrate shortly.

The impression "that in determining reasonable attorney fees the contingency fee arrangement could be considered" was not "erroneous," as the majority says, but correct according to prior law.

The briefs in the prior cases show that in the *United Development* case the contract of the landowners with the attorneys was for a $1,000 retainer fee, plus a ten percent contingent fee to one firm of attorneys and

a three percent contingent fee to another. The trial court, in its order as to the attorney fees, noted that the minimum-fee schedule of the State Bar Association in effect at that time listed nine relevant factors to be taken into consideration in determining fees. One of those factors was "the contingency or the certainty of the compensation." The court noted that the contingent fee pursuant to the agreement came to $4,650 and that counsel testified that they thought their clients, when presented a detailed billing of the work involved, would pay additional attorney fees. The trial court said, "However, the Court cannot speculate on what this fee may be or whether the clients will agree to pay any additional fee, nor can the Court, in my opinion, award as a reasonable attorney's fee any amount over and above the actual attorneys' fees as agreed upon between the parties to the lawsuit." The court therefore ordered the payment of $4,650 as a reasonable fee, and this court affirmed it. This shows that both courts considered the contingency of the fee, and both determined that contingent fees were in that case reasonable.

The same can be said of the two *Wetsch* cases. In the first of those cases time records were filed and fees computed on an hourly basis, totaling $1,489, and yet the trial court made and this court affirmed the award of $3,967, based upon the contingent fee agreement between client and attorney—about 2½ times the hourly fee. How, then, can it be said, as the majority opinion says, that the term "customary fee charged," as interpreted by Justice Strutz and other members of this court, "has reference to the hourly rate or its equivalent rather than a contingency fee arrangement"? In all of the prior cases the contingent fee was recognized as the customary fee. How can the majority say that "The number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees"?

---

1. The appraisal expert of the City was a nationally known expert. The undersigned knows, from personal experience, that effective cross-

examination of him requires considerable preparation and skill.

The hours spent were irrelevant or unimportant in all of our prior cases. How can it be said "that an erroneous impression was left that in determining reasonable attorney fees the contingency fee arrangement could be considered  .  .  ."? In all of the prior cases it was considered, and correctly so.

In the *Stockman* case, *supra*, the district judge, who had represented the United States Government in eminent-domain cases, said:

"Contingent fees have the approval of the courts and the legal profession. The percentage of 33⅓ over the offer which was fixed by the contract between the client and counsel in this case, is that very same percentage suggested for eminent domain cases in the recent fee schedule published by the North Dakota State Bar Association. My own experience confirms that this type of fee and the percentage here employed is usual and customary in eminent domain cases."

This court affirmed the award.

In the *Sauvageau* case, the State did not even contest the reasonableness of the attorney fee of one-third as a general proposition, but only argued, without success, that it should not be applied in that case because the State had revised its appraisal upward before the trial commenced.

In all of these cases the trial court obviously considered the contingent fee agreed upon between attorney and client, and considered that fee to be a customary fee, and determined that it was proper. In every case this court approved the fee as determined by the trial court.

The district court in the case now before us went through exactly the same process as the district courts in all of our prior cases cited, and came to the same result: that the contingent fee was customary, that it should be considered, and that it was reasonable.

Now a majority of this court, in the face of all of these prior holdings, says that "customary fee" does not mean what it previously has been held to mean, but means something else. It holds that the starting point in arriving at a "reasonable fee" is not the customary contingent fee, but an hourly fee basis; and that "reasonable fee" is not the fee as determined in the previous cases, but is a fee determined under entirely new guidelines, taken partly from antitrust cases, partly from crime reparation cases, partly from guidelines for attorney fees in criminal cases where attorneys are appointed to work on an hourly basis, and partly on mere assertion, but *not* from our own five previous decisions.

We have held many times that trial judges themselves are experts on what is a reasonable attorney fee. *Wetsch, supra,* 142 N.W.2d at 753; *Stockman, supra,* 198 N.W.2d at 215; *Schollmeyer v. Saxowsky,* 211 N.W.2d 377, 388 (N.D.1973). We should respect that expertise and affirm the award in this case as we did in the earlier cases cited. Similarly, members of this court have some familiarity with eminent-domain actions and attorney fees. I am compelled to say that I believe I have tried more such cases than any other person in North Dakota, both for taking agencies and landowners, and both in Federal court and State court. In some of them the late Justice Strutz was also attorney. I can say with assurance that for the past 25 years more than 90 percent, and perhaps 100 percent, of fee arrangements between landowners and their attorneys in eminent-domain actions have been based upon a contingent fee. Since lawyers must be paid one way or another, it is impossible for us to say that contingent fees are unreasonable per se, since clients almost invariably choose to pay their attorneys that way. I think we must conclude that a contingent fee is presumptively reasonable. This court on prior occasions has come to that conclusion, but the present majority apparently disagrees. No one can say that contingent fees are not customary in this State, but the majority now says that "customary fee" doesn't mean what is customary between the client and the attorney, but means something else. I don't know what else it can mean.

The majority fails to give the expertise of the district judge in fixing attorney fees a decent respect. It gives no respect to Rule 52(a) or our own precedents, which should compel us to sustain and affirm the finding that the fee awarded by the district court was reasonable.

A fundamental objection to the majority opinion arises from its easy assumption that a reasonable fee is necessarily based upon an hourly rate.[2] Any lawyer of experience can recite instances where lawyers earned fees of thousands of dollars by only a few letters or phone calls, taking only a few hours. But any lawyer who can earn fees that way does so only because he has acquired by experience over many years, involving thousands of uncompensated or poorly compensated hours of work, the expertise required to earn a large fee in a short period of time. Lawyers may spend a lifetime preparing for one magnificent hour. When that hour arrives, they deserve more than piecework rates.

Finally, the unfairness of the majority's holding is illustrated by the sentence in the opinion which says:

".  .  . under § 32–15–32, NDCC, once the recovery is greater than the amount offered from which the appeal is taken reasonable attorney fees are allowable without regard to the amount recovered in excess of the offer."

In plain language, the statute, together with the remainder of the holding of the majority, means that if the landowner is unsuccessful in getting an award of more than the offer of the taking agency, he gets no attorney fees, while if he is successful, he gets attorney fees based primarily upon hourly rates. In other words, he gets the worst of both worlds, and so does his attorney. The attorney fee is contingent upon getting as much as the offer, says the majority, but it cannot be contingent upon getting a percentage of the increase. The majority should either allow contingent fees

in all cases, in which instance the attorney and client would get the benefit of a large increase and take the risk of no increase or a small increase, or it should require the payment by the taking agency of attorney fees in all instances, successful or unsuccessful. When the law forbids the award of any attorney fees to unsuccessful landowner litigants, this court should in all fairness permit those who take that risk to make contracts for contingent fees in the hope that substantially higher awards will be obtained. This is a case of heads, the State wins, and tails, the landowner loses.

I would affirm the order of the district court.

---

**2.** As we said in *Hughes v. North Dakota Crime Victims Reparations Board*, 246 N.W.2d 774, 777 (N.D.1976), "If court-awarded attorney fees are to be based primarily upon time spent in preparation, the result would be that the most competent, experienced lawyer would receive the lowest award."