R.D. CASSADY, Genevieve Johnson, Claude Cassady, Jr., David Cassady, Rexford M. Cassady and Jerry Cassady, Plaintiffs, Appellants and Cross–Appellees,

v.

SOURIS RIVER TELEPHONE CO-OPERATIVE, Defendant, Appellee and Cross–Appellant.

Civ. No. 930311.

Supreme Court of North Dakota.

Aug. 24, 1994.

SANDSTROM, Justice.

We are asked to decide if all members of a cooperative are automatically disqualified for cause from serving on a jury when the cooperative is a party. We hold they are not, and affirm the judgment of the trial court.

### I

R.D. Cassady, Genevieve Johnson, Claude Cassady, Jr., David Cassady, Rexford M. Cassady, and Jerry Cassady (Cassady) have appealed from a judgment awarding them $1,500 for trespass, $1,940 for attorney fees, and costs of $250.72 in their trespass action against Souris River Telephone Cooperative (SRT). SRT cross-appealed, challenging the award of attorney fees. We affirm.

Without first securing an easement, SRT buried a fiber optic cable, one-half inch in diameter, 36 inches deep on Cassady's 80–acre tract of Renville County farmland. In 1990, Cassady brought a trespass action in Ward County against SRT for an injunction restraining SRT from maintaining the cable on the premises, damages, costs, disbursements, and attorney fees. The complaint was later amended to add a request for punitive damages. SRT answered and counterclaimed to take an easement by eminent domain to maintain the cable.

In 1991, SRT moved for a change of venue to Renville County under N.D.C.C. § 28–04–01.[1] After a hearing, the district court ordered a change in venue from Ward County to Renville County, and the case was set for trial on January 20, 1993. The case was later assigned to a different judge and trial was rescheduled for March 3, 1993. On February 16, 1993, Cassady's present counsel[2] moved for a change of venue from Renville County to Ward County, under N.D.C.C. Section 28–04–07 because "it appears impos-

Lynn M. Boughey, Minot, for plaintiffs, appellants and cross-appellees.

David J. Hogue, of Pringle & Herigstad, PC, Minot, for defendant, appellee and cross-appellant.

1. Section 28–04–01, N.D.C.C., provides in part:

"*28–04–01. Venue of actions relating to real property.* An action for any one of the following causes must be brought in the county in which the subject matter of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial upon agreement of counsel or in other cases provided by statute:

"1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest.
"2. For injuries to real property.
 * * * * * *
"5. For the taking of property by eminent domain."

2. On June 17, 1991, the district court granted the motion of Cassady's initial counsel to withdraw from the case.

sible to obtain a qualifying jury in the County of Renville pursuant to the dictates of Section 28–14–06(5)." During jury selection, the trial court said "the mere fact that they're going to get patronage or capital credits . . . by itself wouldn't be sufficient" to disqualify a SRT member from serving on the jury. The motion was denied and a jury was seated.

By summary judgment, the court granted SRT an easement by eminent domain, and left for the jury the issue of compensation. The jury returned a special verdict in which it found a trespass occurred, resulting in damages of $1,500; SRT "did not act with fraud, oppression, or malice," resulting in no award of exemplary damages; and there was no "diminishment of the value of the land due to the taking by eminent domain." Cassady filed a motion requesting $9,700.50 in attorney fees, based on an hourly rate of $85, and costs under N.D.C.C. § 32–15–32. The trial court found Cassady's attorney spent about 80 percent of his time on trespass and exemplary damage matters and 20 percent of his time on matters related to eminent domain. The court awarded 20 percent of the billing, $1,940, for attorney fees. In awarding costs of $250.72, the court also employed a 20 percent factor.

On appeal, Cassady contends all the potential jurors in Renville County are members of SRT and, therefore, have a disqualifying economic interest in the outcome of the case under N.D.C.C. § 28–14–06(5), from which the trial court should have concluded there was reason to believe an impartial trial could not be had in Renville County. Cassady, therefore, argues the trial court abused its discretion in refusing to change venue under N.D.C.C. § 28–04–07.

The trial court had jurisdiction under Art. VI, § 8, N.D.Const., and N.D.C.C. § 27–05–06. We have jurisdiction under Art. VI, § 2, N.D.Const., and N.D.C.C. § 28–27–01. The appeal was timely under Rule 4(a), N.D.R.App.P.

## II

 The burden is on the party seeking a change of venue to demonstrate the facts warrant the requested change. *Jerry Har-* *mon Motors, Inc. v. First Nat'l Bank & Trust Co.*, 440 N.W.2d 704 (N.D.1989); *Haugo v. Haaland*, 349 N.W.2d 25 (N.D.1984). Whether a change of venue is necessary to obtain a fair and impartial trial is a question of fact. *Jerry Harmon Motors, Inc.; Haugo.* A trial court's decision granting or denying a motion for a change of venue will not be overturned on appeal unless an abuse of discretion is shown. *Haugo.* "The party seeking the change in venue has the burden to establish that an impartial trial cannot be held in the county from which the transfer is sought." *Slaubaugh v. Slaubaugh*, 499 N.W.2d 99, 106 (N.D.1993).

 Section 28–04–07, N.D.C.C., provides in part:

"*28–04–07. Court may change venue— Cases.* The court may change the place of trial in the following cases:

\* \* \* \* \* \*

"2. When there is reason to believe that an impartial trial cannot be had therein."

Section 28–14–06, N.D.C.C., provides in part:

"*28–14–06. Challenges for cause— Grounds.* Challenges for cause may be taken on one or more of the following grounds:

\* \* \* \* \* \*

"5. Interest on the part of the juror in the event of the action, or in the main question involved in the action, except his interest as a member or citizen of a municipal corporation."

Cassady's argument would make membership in a cooperative which is a party in an action an automatic disqualification for interest under N.D.C.C. § 28–14–06, and would make a trial court's failure to grant a motion for change of venue under N.D.C.C. § 28–04–07, an abuse of discretion. Such an automatic disqualification would fly in the face of N.D.C.C. § 28–14–07, which requires trial of challenges for cause: "Challenges for cause must be tried by the court. The juror challenged and any other person may be examined as a witness on the trial of the challenge." Thus, automatic disqualification is

not required when a potential juror is challenged for cause under N.D.C.C. § 28–14–06.

Courts in other states have refused to adopt blanket disqualifications. In *Garcia v. Coast Elec. Power Ass'n*, 493 So.2d 380 (Miss.1986), the court refused to adopt automatic disqualification of cooperative members in cases in which the cooperative was a party. The court in *Garcia* noted: "In a largely rural area such as exists in Mississippi, all people outside municipalities are supplied by electrical cooperatives. Any pecuniary gain the customer or member receives is practically nil." 493 So.2d at 383–84. California courts construing statutory provisions like ours have refused to find automatic or blanket disqualifications. In *People v. Brotherton*, 47 Cal. 388, 396 (1874), the court said a juror "is presumed to be competent until his incompetency is affirmatively established." In *Kimbley v. Kaiser Foundation Hospitals*, 164 Cal.App.3d 1166, 211 Cal.Rptr. 148 (1985), a medical malpractice action, the plaintiff moved to exclude all members of the Kaiser Foundation Health Plan from the jury on the ground they had a financial interest. The court upheld the trial court's denial of the motion. Construing C.C.C.P. §§ 602(6) and 603, which are similar to N.D.C.C. §§ 28–14–06(5) and 28–14–07, the court held a party does not establish the necessary financial interest merely by showing membership in an organization or cooperative that is a party to the action. The court stated in *Kimbley*:

> "It is well settled that a remote or insignificant interest cannot support a challenge for cause. Customers of a defendant utility company may not be disqualified on the basis of their business dealings with that company. There must be some inquiry regarding the nature and extent of such a relationship."

211 Cal.Rptr. at 152.

This Court has also refused to adopt automatic or blanket disqualifications of potential jurors. *See Jerry Harmon Motors, Inc.* (refusing to require automatic disqualification of bank depositors from serving on a jury in an action involving the bank); *Basin Elec. Power Co-op v. Miller*, 310 N.W.2d 715, 719 (N.D.1981) ("we cannot construe Section 28–14–06(3), N.D.C.C., as requiring an employee of one of the parties to be disqualified as a matter of law, particularly in the absence of a challenge for cause to that particular prospective juror"); *Farmers Union Grain Terminal Ass'n v. Nelson*, 223 N.W.2d 494, 500 (N.D.1974) (spouses of persons doing business with a cooperative are not automatically disqualified as jurors in a case involving the cooperative; "blanket disqualification for GTA members would not appear advisable.")

Cassady relies upon *State v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121 (1960), which was a criminal prosecution for burglary of the Bennett County Cooperative Association, at least one member of which sat on the jury. The court held all members of the cooperative should have been removed from the jury list. The court said:

> "Membership in the Cooperative alleged to have been burglarized clearly constituted a disqualifying interest on the part of such jurors within the contemplation of SDC Supp. 33.1311(5). It was immaterial how such membership was obtained."

*Thomlinson*, 100 N.W.2d at 122. We are not persuaded as to the wisdom of applying an unexplained blanket disqualification in a criminal case to a civil action, especially in light of this Court's history of not adopting blanket disqualifications for jury service and Cassady's failure to attempt to establish actual bias on the part of individual potential jurors, as distinguished from assumed bias due to mere membership in SRT.

■ We conclude mere membership in a cooperative does not signify an interest sufficient to automatically disqualify a person from serving as a juror in a case involving the cooperative. To disqualify a prospective juror, a challenger must establish an actual bias, rather than a presumed bias, on the part of the prospective juror. The judge who granted the first motion for a change of venue, from Ward County to Renville County, appropriately observed "[t]he damages in this case are not likely to involve a significant sum." Considering SRT's 11,500 members, any financial interest individual members might have is essentially de minimis. Cassady made no attempt to probe the attitudes of individual prospective jurors, choosing to rely

only on cooperative membership as an indication of prejudice. Cassady did not establish prejudice. We conclude the trial court did not abuse its discretion in refusing to order a change of venue.

## III

In its cross-appeal, SRT contends Cassady should not have been awarded any attorney fees. Cassady contends the trial court erred in limiting costs and attorney fees to those relating to the eminent domain aspects of the case.

Section 32–15–32, N.D.C.C., authorizes costs and attorney fees in eminent domain cases, providing in part:

"The court may in its discretion award ... reasonable actual or statutory costs or both, ... and reasonable attorney's fees for all judicial proceedings."

The award of attorney fees in an eminent domain action "is a matter addressed to the sound discretion of the trial court." *United Power Ass'n v. Moxness*, 267 N.W.2d 814, 818 (N.D.1978). The amount of attorney fees is left to the discretion of the trial court. *Gissel v. Kenmare Twp.*, 512 N.W.2d 470 (N.D.1994). Absent an abuse of discretion, this Court will not set aside a trial court's determination on costs and attorney fees under N.D.C.C. § 32–15–32. *City of Devils Lake v. Davis*, 480 N.W.2d 720 (N.D.1992).

Without any citations to authorities or supportive reasoning, SRT argues:

"[I]n order for the court to award attorney's fees for condemnation, there must be an underlying award for the amount of the condemnation.... Without an underlying award of diminution of value from the jury, SRT is being asked to pay attorney's fees and cost for Plaintiffs' trespass and exemplary damage claims for relief."

From the arguments presented, we are not persuaded the trial court abused its discretion in awarding costs and attorney fees under N.D.C.C. § 32–15–32. The trial court ruled SRT had effected the taking of an easement by eminent domain, leaving the amount SRT should pay up to the jury. Although the jury did not find the land was diminished in value by SRT's burial of the

cable, it did find that SRT's trespass resulted in damages of $1,500. Regardless of its denomination, the question involved in this case at trial was how much SRT was going to be required to pay for burying a cable on Cassady's land. The amount was $1,500.

As to costs and attorney fees awarded by the trial court, Cassady contends too little was awarded and SRT contends too much was awarded. We affirm the trial court's award.

SRT contends Cassady's fees are limited to customary fees, not exceeding their agreement with counsel. SRT argues, because the trial court awarded $1,940 in attorney fees and Cassady was obligated by a contingent fee agreement to pay only $500, the trial court unknowingly raised the jury's verdict by $1,440, which is an abuse of discretion. The trial court did not raise the jury's verdict. The verdict stated the amount of damages the jury found caused by SRT's trespass. The trial court merely added costs and attorney fees to the damage award. SRT's attempt to limit the attorney fee award by using the contingency agreement between Cassady and counsel is unavailing. This Court held in *Bismarck v. Thom*, 261 N.W.2d 640, 643 (N.D.1977), "[c]ontingency fee arrangements in their usual sense have no application under § 32–15–32, NDCC." As this Court further observed: "It is the reasonableness of the fee, and not the arrangement the attorney and his client may have agreed upon, which is controlling whenever the fee is to be assessed and included in the judgment, as is provided for in § 32–15–32, N.D.C.C." *Thom* at 645–46. Thus, Cassady's contingency agreement with counsel does not limit the trial court's attorney fee award under N.D.C.C. § 32–15–32.

In *Bismarck v. Thom*, this Court set out a number of factors for trial courts to consider in deciding attorney fee awards under N.D.C.C. § 32–15–32: the number of hours expended; a specific hourly rate based upon the attorney's experience and reputation, which can be adjusted up or down on the basis of the complexity and novelty of the litigation and the degree of skills displayed by the attorney; the character of the servic-

es rendered; the results obtained; the customary fee charged for such services; and the attorney's ability and skill. Here the trial court considered the *Thom* factors. The trial court reduced the attorney fees sought by 80 percent, explaining:

> "The Plaintiffs were primarily interested in recovering under actions for trespass and exemplary damages. The eminent domain was an issue they had to deal with since the Defendant raised that matter. The Court believes that the attorney for the Plaintiffs would have devoted about 80 percent of his time in the two primary areas. The Court reviewed the billing. It checked for items specifically dealing with eminent domain matters. It assigned varying percentages to other items in excess of $25. It did not consider any items under $25. When the items were totalled, the amount was slightly higher than 20 percent. Thus the Court believes that 20 percent of the total billing or $1,940 would be reasonable as attorney fees."

The court assigned the same factor to costs. "The court considered the facts and the law and reached a reasoned and reasonable determination." *Gissel* at 478. The trial court's stated rationale sufficiently explained why it reduced the attorney fees requested and we cannot say that the court abused its discretion in reducing the fees sought. Although Cassady did not prevail on the eminent domain issue, the statute gives the trial court discretion to award attorney fees in all eminent domain judicial proceedings. We conclude the trial court did not abuse its discretion in awarding the costs and attorney fees that it did.

### IV

The judgment is affirmed.

VANDE WALLE, C.J., LEVINE, J., and RALPH J. ERICKSTAD and VERNON R. PEDERSON, Surrogate Judges, concur.

RALPH J. ERICKSTAD and VERNON R. PEDERSON, Surrogate Judges, sitting in place of NEUMANN and MESCHKE, JJ., disqualified.