The CITY OF DEVILS LAKE,
a municipal corporation,
Plaintiff and Appellee,

v.

William C. DAVIS and Davis Motel,
Inc., Defendants and Appellants.

Civ. No. 910096.

Supreme Court of North Dakota.

Feb. 4, 1992.

Dosch Law Office, Devils Lake, for plaintiff and appellee; argued by Ronald M. Dosch, City Atty.

Wheeler Wolf, Bismarck, for defendants and appellants; argued by Steven L. Latham. Appearance by appellant William C. Davis.

MESCHKE, Justice.

William C. Davis appeals from a condemnation judgment, entered upon a jury verdict, awarding him $134,235, plus costs and interest, as just compensation for a permanent easement. We affirm the award of damages and remand for a redetermination of attorney's fees.

On April 7, 1989, the City of Devils Lake commenced an eminent domain proceed-

ing[1] against Davis, Burlington Northern Railroad, and Robert and Helen Weed to acquire a permanent easement on 373.26 acres of land riparian to Devils Lake for a sewage treatment facility. The City offered the defendants $150 per acre for their respective parcels and deposited $55,989 with the Clerk of the District Court on their behalf. The City designated $45,885 of that deposit for the 305.9 acres which it alleged that Davis owned. Davis answered,[2] alleging that the City's apportionment of the riparian interests was erroneous and that the City was seeking more than 305.9 acres from him. On August 8, 1989, the court released the $45,885 deposit, plus interest, to Davis and also granted the City immediate possession of the riparian property described in the complaint.

Because of unique legal questions about the apportionment, ownership, and legal description of the riparian property, the court bifurcated the action to try those questions first, with a later determination of just compensation. Thereafter, on August 29, 1990, Davis and the City stipulated to the apportionment, ownership, and legal description of the riparian property taken. Then, the City amended its complaint to take 391.45 acres from Davis at $300 per acre. Meanwhile, on June 12, 1990, the City had deposited an additional $70,323.75 with the Clerk of Court for Davis, making the total deposits for his benefit $117,000.

On October 2, 1990, Davis asked the trial court to rule on the date of taking for purposes of determining the value of the property taken. Davis contended that the date of taking was either the August 29, 1990 stipulation, or the June 12, 1990 deposit in court. The City asserted that the date of taking was August 8, 1989, when the court released the $45,885 deposit, plus interest, to Davis and granted the City immediate possession of the property. The trial court ruled that the date of taking was August 8, 1989.

At trial, the court informed the jury: Based upon the stipulation of the parties, the court informs you of the following information which you may consider in reaching your verdict on any of the disputed facts. The City has deposited the amount of $117,000 with the court as a

---

1. NDCC 40–22–05 says:
 *Condemnation of land and rights of way for special improvements—Taking of possession—Trial—Appeal—Vacation of judgment.* Whenever property required to make any improvement authorized by this chapter is to be taken by condemnation proceedings, the court, upon request by resolution of the governing body of the municipality making such improvement, shall call a special term of court for the trial of the proceedings and may summon a jury for the trial whenever necessary. The proceedings shall be instituted and prosecuted in accordance with the provisions of chapter 32–15, except that when the interest sought to be acquired is a right of way for the opening, laying out, widening, or enlargement of any street, highway, avenue, boulevard, or alley in the municipality, or for the laying of any main, pipe, ditch, canal, flume for conducting water, storm water, or sewage, whether within or without the municipality, the municipality may make an offer to purchase the right of way and may deposit the amount of the offer with the clerk of the district court of the county wherein the right of way is located, and may thereupon take possession of the right of way forthwith. The offer shall be made by resolution of the governing body of the municipality, a copy of which shall be attached to the complaint filed with said clerk of court in accordance with

section 32–15–18. The clerk shall immediately notify the owner or owners of the land wherein the right of way is located of the deposit, by causing a notice to be appended to the summons when served and published in said proceedings as provided in the North Dakota Rules of Civil Procedure, stating the amount deposited or agreed in the resolution to be deposited. The owner may thereupon appeal to the court by filing an answer to the complaint in the manner provided in the North Dakota Rules of Civil Procedure, and may have a jury trial, unless a jury be waived, to determine the damages. However, upon due proof of the service of said notice and summons and upon deposit of the aggregate sum agreed in said resolution, the court may without further notice make and enter an order determining the municipality to be entitled to take immediate possession of the right of way.

2. Burlington Northern and Robert and Helen Weed did not formally answer the eminent domain action. Burlington Northern withdrew $8,992.50, plus interest, held by the Clerk of Court for its benefit and stipulated with the City for the dismissal of the complaint against it. Robert and Helen Weed withdrew $1,204, plus interest, held by the Clerk of Court for their benefit and stipulated with the City for the dismissal of the complaint against them.

part of the taking of the Davis property, so you may consider that as well as the other evidence in reaching your decision of just compensation.

The jury returned a special verdict, determining that Davis was entitled to $134,325 for the property actually taken and that he was not entitled to severance or consequential damages for his remaining property. The trial court deducted the $117,000 deposit from the jury verdict and also reduced Davis's request for attorney's fees, professional fees, and costs from about $48,000 to $21,853.75. Davis appealed.

Davis argues that the trial court erred in instructing the jury that the date of taking was August 8, 1989, because the trial court's order granting the City immediate possession of the property on that date did not include a substantial portion of the property ultimately taken. Davis contends that the date of taking was either the date the City made its final deposit, June 12, 1990, or the date of the parties' stipulation, August 29, 1990. The City admits that its original complaint did not accurately describe the property taken and that it included some property which was not taken. However, the City argues that the trial court correctly instructed the jury that August 8, 1989, was the date of taking because the parties were committed to the condemnation on that date.

▆▆▆▆ Under NDCC 32-15-23, compensation and damages in an eminent domain action are determined from the "date of the taking." *Hultberg v. Hjelle*, 286 N.W.2d 448 (N.D.1979).[3] Here, the City initially sought to take 305.9 acres from Davis and deposited $45,885 with the Clerk of Court for his benefit. The trial court granted the City immediate possession on August 8, 1989. However, on August 29, 1990, the City and Davis stipulated that the riparian property taken from Davis consisted of 391.45 acres. That difference in acres was attributable to an error in the legal description prepared by the City's appraiser as well as the apportionment of the riparian land.

Ordinarily, these circumstances would have required different dates of taking for the different parcels of property. However, we need not decide whether the trial court erred in instructing the jury that the date of taking was August 8, 1989, because, assuming error, Davis did not make a showing that, on either of his alternative dates of taking, the value of the property was different than on August 8, 1989. In a similar situation in *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989), the Nebraska Supreme Court held that property owners were not prejudiced by an erroneous instruction on the date of taking where the owners' evidence of value of the property was the same on the date instructed by the trial court and on the date of actual taking. Here, absent a showing that the property had a different value on the alternative dates asserted by Davis, we conclude that the error, if any, by the trial court in instructing the jury on the date of taking was harmless.

3. NDCC 32-15-23 currently says:

*When right to damages accrues.*—For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued *at the date of the taking* and its actual value at that date shall be the measure of compensation for all property actually to be taken, and the basis of damages to the property not actually taken, but injuriously affected, in all cases when such damages are allowed as provided in section 32–15–22. The time of the taking shall be determined by the court. [Emphasis added].

In *Tri–State Telephone & Telegraph Co. v. Cosgriff*, 19 N.D. 771, 124 N.W. 75 (1909) *overruled on other grounds by Otter Tail Power Co. v. Von Bank*, 72 N.D. 497, 8 N.W.2d 599 (1943), this court said that under R.C. 1905, § 7596, compensation and damages were measured at the time of trial. R.C. 1905, § 7596 said:

*When right to damages accrues.* For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued *at the date of the trial* and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to the property not actually taken, but injuriously affected, in all cases when such damages are allowed as provided in section 7595. No improvements put upon the property subsequent to the date of the service of the summons shall be included in the assessment of compensation or damages. [Emphasis added].

In 1969 the Legislature amended that statute to change the date when damages accrue from the date of trial to the date of taking. 1969 N.D.Sess. Laws, ch. 311, § 1.

■ Davis argues that the trial court abused its discretion in allowing the City's expert appraiser, David Campbell, to render an opinion on the value of the property taken because his written appraisal was made more than one year before the date of taking. Davis asserts that Campbell's opinion was too remote to assist the jury in determining the value of the property on the date of taking.

■ Under NDREvid 702, whether expert testimony will assist the trier of fact in understanding the evidence or determining a factual issue rests within the discretion of the trial court, and its decision will not be overturned on appeal absent an abuse of discretion. *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989); *see Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D. 1975). A trial court also has broad discretion in determining whether or not evidence is relevant under NDREvid 401. *Bank of Steele v. Lang*, 399 N.W.2d 293 (N.D.1987). Those standards guide our analysis of the admissibility of Campbell's opinion.

Campbell's written appraisal, that was prepared more than one year before the date of taking, valued some of the property taken at $300 per acre. However, he testified that the evidence presented at trial did not persuade him that the property taken had a different value on the date of taking:

Q. Okay. The point that I'm getting at is does the fact that you did not have that exact legal description in front of your when you did this work back in '88, does that change your opinion now that you know what the exact land area is?
A. No, because I valued this acreage as part of the meander line areas and that was $300 per acre.

\* \* \* \* \* \*

Q. Does that change your estimation of value on that property not having the legal description?
A. No.
Q. And then, Mr. Latham says wouldn't you normally update your appraisal since it was completed in July of '88? And I believe you answered positively or whatever—what was your answer on that?

A. Typically, we update it to the date of taking.
Q. Okay. Now, even though we don't have your input from '88 up to '90, we have heard other comparable sales testified to in this courtroom, haven't we?
A. Yes.
Q. And you've listened to those?
A. Yes.
Q. They've come from Mr. Davis. They've come from Mr. Weed and you have considered them alongside of your existing appraisal in front of you today. Have you done that?
A. Yes, I have.
Q. Even though they're probably two years later, a year and a half later, have you heard of anything from the sales prices given to you that would make you change your opinion as to the original 300 an acre you came up with?
A. No.
Q. Even a year and a half ago?
A. No.
Q. So if you had those particular comparable sales right in front and you could supplement your report and put a different date on that of 1991, would we likely still be dealing with the same figures?
A. With those sales, yes.
Q. $300 an acre?
A. Yes.

This testimony effectively updated Campbell's written appraisal.

■ Still, Campbell's written appraisal would have been more probative if it had been updated to the date of taking before he testified. *Cf. Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975) [Comparable sales may be used as an underlying basis for an expert's opinion on value of property; if a "comparable sale" is only remotely comparable or not comparable, it goes to the weight of the expert's opinion and not to the admissibility of the evidence]. However, in view of Campbell's explanation of his opinion, relating it to the value of the property on the date of taking, we cannot say that the trial court abused its discretion in admitting his opinion.

■ Davis next argues that the trial court erred in deducting the $117,000 deposit from the jury verdict. To resolve that question in this case, we must also consider Davis's argument that the evidence was insufficient to support the jury's award of damages.

■ The determination of damages in an eminent domain action is a question of fact to be decided by the trier of fact. *Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975). It is well settled that our review of questions of fact decided by a jury is limited to determining if there is substantial evidence to support the verdict. *Arneson v. City of Fargo*, 331 N.W.2d 30 (N.D.1983). We view the evidence in the light most favorable to the verdict, and we ordinarily sustain an award of damages if it is within the range of the evidence presented to the jury. *City of Hazelton v. Daugherty*, 275 N.W.2d 624 (N.D.1979). We thus review the jury's award of damages in the light most favorable to the verdict to determine if there is substantial evidence to support the verdict.

■ Private property cannot be taken or damaged for public use without just compensation being made to the owner. N.D. Const. Art. I, § 16.[4] An owner whose property has been taken by condemnation is entitled to the fair market value of property actually taken and to severance or consequential damages for property not taken. NDCC 32–15–22;[5] *City of Hazelton; Sauvageau v. Hjelle*, 213 N.W.2d 381 (N.D.1973); *Little v. Burleigh County*, 82 N.W.2d 603 (N.D.1957). Damage to property not taken is not presumed. *City of Hazelton*. The owner has the burden of proof to show that the condemnation has reduced the value of the property not taken. *Id*. Here, there was conflicting evidence about the fair market value of the property taken and about the existence of severance and consequential damages to Davis's remaining property.

Davis testified that 14 of the acres taken were worth $3,000 per acre and that the remaining 377.45 acres were worth $300 per acre. Davis thus concluded that the total value of the property taken was $155,-235. Campbell, the City's expert, testified that it was inappropriate to split this 391.45 acres into separate parcels to determine its value. He testified that all of the property taken was worth $300 per acre for a total of $117,000. The award of $134,235 for the property taken is within the range of the testimony of the witnesses.

Davis also presented evidence that his remaining property was worth $549,800 and that the City's taking resulted in a 15%

4. N.D. Const. Art. I, § 16 says:
Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. No right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, provided however, that when the state or any of its departments, agencies or political subdivisions seeks to acquire right of way, it may take possession upon making an offer to purchase and by depositing the amount of such offer with the clerk of the district court of the county wherein the right of way is located. The clerk shall immediately notify the owner of such deposit. The owner may thereupon appeal to the court in the manner provided by law, and may have a jury trial, unless a jury be waived, to determine the damages.

5. NDCC 32–15–22 says:

*Assessment of damages.*—The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:
1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed.
2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.
3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.

decrease in the value of that property. He thus testified that he was entitled to $82,-470 in severance and consequential damages. However, an adjoining landowner who also had property taken, Robert Weed, testified that he sold a parcel of land to Cenex in June of 1989 for $100,000. Weed testified that the sewage treatment facility did not have an impact on the value of his property and that he could not say that the value of his property would be greater without the taking. There was also evidence of other comparable sales in the immediate area after the taking which supported an inference that the remaining Davis property had not diminished in value because of the taking.

Viewing the evidence in the light most favorable to the verdict, there was substantial evidence that the value of the property taken was $134,235 and that Davis failed to show that he suffered severance or consequential damages to his remaining property. We therefore affirm the jury verdict. Because the jury specifically refused to award severance or consequential damages and in view of the range of evidence of the value of the property taken, we also conclude that the trial court did not err in deducting the $117,000 deposit from the damages awarded by the jury.

Davis contends the trial court abused its discretion in reducing his request for about $28,000 in professional fees and costs to $11,096.97 and in reducing his request for $18,580.78 in attorney's fees and costs to $10,756.78.

 The trial court is authorized to award costs and attorney's fees in an eminent domain action. NDCC 32–15–32; *Arneson v. City of Fargo*, 331 N.W.2d 30 (N.D.1983); *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977). We will not set aside a trial court's determination on those matters absent an abuse of discretion.

 The trial court reduced Davis's request for professional fees and costs because it concluded that some of those fees and costs were not related to this case. The court recognized that some of the requested professional fees were attributable to another pending lawsuit involving the same land and a claim against the City for inverse condemnation and trespass which allegedly occurred before this taking. The trial court made specific findings about the relationship of each requested professional fee to this lawsuit. Those findings sufficiently explained the court's rationale for reducing those fees, and we cannot say that it abused its discretion in reducing Davis's request.

 In determining reasonable attorney's fees, a trial court must first determine the number of hours expended and then assign specific hourly rates based upon the attorney's experience and reputation. *Thom.* Here, the trial court made the following determinations about attorney's fees:

16. The court has considered the reasonable rates charged by attorneys with expertise/experiences in this geographical area in condemnation actions. Mr. Latham has numerous years of experience in condemnation litigation. While the hourly rate of $100 is within the reasonable range of attorney's fees for such an experienced attorney, his expertise should reduce the preparation time and hours spent on a case of this nature.

17. The deposit and legal description problems in this case added some extra time to the legal work.

18. The trial took two days, so was of no great duration or complexity. The jury award *was* only $17,000 above the amount deposited by the condemnor, despite the defendant's request for $237,-705 or an additional $118,000 over the deposit.

19. As a comparison, the reasonable attorney's fees awarded in 1987 to the chief counsel in the very complex class action *Lakebed of Devils Lake* case were about one half of the amount requested by defendants in this case.

\* \* \* \* \* \*

9. Based on the *Thom* factors and the findings, the attorney fees requested in this case are unreasonable and require a reduction. The attorney's fees in the

amount of *$9,823* plus costs of *$933.78* are reasonable.

The trial court essentially determined that the hourly rate of counsel for Davis was reasonable, but seems to have reduced the attorney's fees drastically, chiefly for lack of significant results obtained. The trial court's statement that the verdict was only $17,000 greater than the City's deposit suggests that the court unduly minimized the legal work done before the City made its additional deposit on June 12, 1990. If that was a controlling factor in reducing the award, we believe that reference takes an unduly narrow view of the legal work done by counsel for Davis to determine the apportionment and legal description of the riparian property taken.

As a result of counsel's efforts, the bifurcated trial that had been scheduled to determine those complex questions was avoided and the City made an additional deposit of $70,323.75 for the benefit of Davis. The trial court's statement about the size of the verdict seems to ignore that the result obtained was nearly $90,000 greater than the City's initial deposit and offer. Davis was entitled to have attorney's fees determined in light of the difference between the amount of the award and the initial deposit in order to measure the results obtained. *Sauvageau v. Hjelle*, 213 N.W.2d 381 (N.D.1973). Under these circumstances we think that the trial court may have been mistaken in reducing the request for attorney's fees so drastically. The "results which the attorney obtained for his client," as well as the "customary fee charged" are among the significant factors in allowing attorney's fees in eminent domain proceedings. *Thom*, 261 N.W.2d at 642–643. All of the factors should be fairly weighed together. *Id.* We therefore remand the award of attorney's fees for reconsideration accordingly, including a more understandable explanation of what work was deemed unreasonable and why it was.

We affirm and remand for a redetermination of reasonable attorney's fees.

VANDE WALLE, Acting C.J., LEVINE, J., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of ERICKSTAD, C.J., disqualified.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.