CITY OF JAMESTOWN, a Municipal Corporation, Plaintiff and Appellee,

v.

LEEVERS SUPERMARKETS, INC., and J and B Partnership, Defendants and Appellants (Two Cases).

Civil Nos. 950328, 950366.

Supreme Court of North Dakota.

July 18, 1996.

Kenneth L. Dalsted, City Attorney, Jamestown, for plaintiff and appellee.

Thomas E. Rutten, of Traynor, Rutten & Traynor, Devils Lake, for defendants and appellants.

SANDSTROM, Justice.

Leevers Supermarkets, Inc. (Leevers), and J and B Partnership (JB) appeal from a judgment granting the City of Jamestown the authority to exercise the power of eminent domain under N.D.C.C. Chapter 32–15 and the Urban Renewal Law, N.D.C.C. Chapter 40–58, to take their interests in commercial property located in downtown Jamestown. Leevers and JB also appeal from a subsequent judgment requiring them to pay the fees and expenses for the City's expert appraiser. In this consolidated appeal, we conclude the City did not abuse its discretion in finding the taking of the disputed property is necessary in the interests of the public economy, health and welfare of its residents. However, because the trial court did not decide whether the primary object of the development project was for the economic welfare of downtown Jamestown and its residents rather than for the primary benefit of private interests, we reverse the judgment granting the City rights to the disputed property and remand to the trial court to make that required finding. We also conclude the trial court had no authority in this eminent domain proceeding to order Leevers and JB to pay the fees and expenses of the City's expert appraiser, and we reverse that judgment.

I

On March 1, 1993, the Jamestown City Council, after a public hearing, adopted a resolution designating a two-square-block development area for commercial properties in downtown Jamestown. The proposed development was for the construction and operation of a retail food store. The designated area included several occupied businesses and residences. Leevers owned and JB leased property in the development area which they used as parking lots. Leevers and JB have common owners and operate the only two full-service grocery stores in Jamestown. Neither store is located near the development area.

On January 15, 1993, Northern Plains Investment, Inc. (Northern), the project developer, requested the City to begin eminent domain proceedings because Northern was "encountering serious problems with some of the landowners and/or lessees[ ] in the proposed project area." Except for the property of Leevers and JB, Northern was able to purchase the remainder of the property from the other owners.

Northern agreed to pay all costs incurred by the City in acquiring by eminent domain any property the developer was unable to purchase through good faith negotiations. In turn, the City agreed to convey to Northern title by quit claim deed to the property it acquired. Northern waived and released all claims against the City "should a court determine the City lacks the authority to acquire project property as contemplated by this agreement pursuant to Chapter 40–58, NDCC, relative to the City's eminent domain powers."

Northern, Leevers, and JB agreed on a purchase price for the property, but Leevers' and JB's acceptance was contingent on there being no tax dollars involved in the development project. Because Northern and the City did not agree to this condition, the City brought this eminent domain proceeding.[1]

The trial court ruled in favor of the City, holding the taking was necessary and awarding Leevers $42,000 and JB $9,964.48 as "fair and just compensation" for the taking. After judgment was entered, the trial court entered another judgment holding the City must pay Leevers' and JB's attorney fees and expenses, less the cost of the City's appraiser fees and expenses.

The trial court had jurisdiction under N.D. Const. Art. VI, §§ 1 and 8, and N.D.C.C. § 27–05–06. Both appeals by Leevers and JB were timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 1 and 2, and N.D.C.C. § 28–27–01.

## II

Leevers and JB assert the City's taking of their property is invalid because the trial court refused to consider whether a public use was established and because the City did not make a proper finding of necessity.

### A

In 1989, the Legislature amended the Urban Renewal Law, N.D.C.C. Chapter 40–58, to permit a municipal government to use its eminent domain power to develop unused or underutilized industrial or commercial property within the municipality even if that property is not in a slum or blighted area. See 1989 N.D. Sess. Laws Ch. 499. As N.D.C.C. § 40–58–02(2) and (3) indicate, the purpose of the amendments was to permit municipalities to act in furtherance of economic development:

"2. It is further found and declared that there exist in municipalities of the state conditions of unemployment, underemployment, and joblessness detrimental to the economic growth of the state economy; that it is appropriate to implement economic development programs both desirable and necessary to eliminate the causes of unemployment, underemployment, and joblessness for the benefit of the state economy; and that tax increment financing is an economic development program designed to facilitate projects that create economic growth and development.

"3. It is further found and declared that the powers conferred by this chapter are for public uses and purposes for which public money may be expended and the power of eminent domain exercised; and that the necessity in the public interest for the provisions

---

1. The record does not reveal whether the City Council adopted a resolution authorizing the eminent domain action. The City Council did adopt a resolution authorizing the City Attorney to finalize a contract between the City and developer pertaining to the project. The contract obligated the City, upon proof of the developer's good faith efforts to acquire the necessary property, to exercise the power of eminent domain. Because Leevers and JB have not complained about the lack of a formal resolution authorizing the eminent domain action, we do not address the issue further.

herein enacted is hereby declared as a matter of legislative determination."

Because the Legislature had specifically declared economic development a public use and purpose, the trial court ruled it was not a question subject to judicial review. Leevers and JB correctly argue the trial court erred in treating the Legislature's declaration as unreviewable.

■ This Court held almost a century ago "courts can always inquire into the nature of the use for which the property is to be condemned for the purpose of determining whether such is, in fact, a public use." *Bigelow v. Draper,* 6 N.D. 152, 69 N.W. 570, 574 (1896). *See also Northern Pacific Ry. Co. v. Kreszeszewski,* 17 N.D. 203, 115 N.W. 679, 681 (1908) ("mere legislative fiat cannot make that a public use which is clearly not such use"). Courts can inquire because a use must be public before private property can be taken by eminent domain under N.D. Const. Art. I, § 16 and U.S. Const. amend. V. *See Square Butte Elec. Coop. v. Hilken,* 244 N.W.2d 519, 523 (N.D.1976). This well-settled principle is explained in 2A J. Sackman and P. Rohan, *Nichols on Eminent Domain* § 7.03[11][b], at pp. 7–96—7–99 (Rev. 3rd ed.1995) (footnotes omitted) (*Nichols*):

> "The presumption is that a use is public when the legislature has declared it to be. The legislature's decision must be treated with the consideration due to a coordinate department of the government of the state. However, this declaration is not binding upon the courts. If, after giving due respect to a legislative declaration, a court considers the purpose not to be reasonable or connected to a valid public use, it is the duty of the court to declare the act[ ] authorizing the taking as unconstitutional."

■ In this case, the trial court's refusal to consider whether economic development is a valid public use or purpose is not reversible error. We will not set aside a correct result merely because the trial court assigned an incorrect reason if the result is the same under the correct law and reasoning. *See Thompson v. Danner,* 507 N.W.2d 550, 557 (N.D.1993). Economic development is generally recognized as a valid public use or purpose. *See, e.g., Wright v. City of Palmer,* 468 P.2d 326, 330–331 (Alaska 1970); *People ex rel. City of Urbana v. Paley,* 68 Ill.2d 62, 11 Ill.Dec. 307, 368 N.E.2d 915, 921 (1977); *Green v. City of Mt. Pleasant,* 256 Iowa 1184, 131 N.W.2d 5, 17 (1964); *Common Cause v. State,* 455 A.2d 1, 24 (Me.1983); *City of Frostburg v. Jenkins,* 215 Md. 9, 136 A.2d 852, 856 (1957); *City of Pipestone v. Madsen,* 287 Minn. 357, 178 N.W.2d 594, 600 (1970); *Maready v. City of Winston–Salem,* 342 N.C. 708, 467 S.E.2d 615, 626 (1996); *McKinney v. City of Greenville,* 262 S.C. 227, 203 S.E.2d 680, 690 (1974). As the court noted in *Faulconer v. City of Danville,* 313 Ky. 468, 232 S.W.2d 80, 83 (1950):

> "The consensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose.... It reaches perhaps its broadest extent under the view that economic welfare is one of the main concerns of the city, state and the federal governments."

We conclude the stimulation of commercial growth and removal of economic stagnation sought by N.D.C.C. Chapter 40–58 are objectives satisfying the public use and purpose requirement of N.D. Const. Art. I, § 16 and U.S. Const. Amend. V.

B

Under N.D.C.C. § 40–58–05(2), a municipality may not exercise any of the powers conferred until its governing body adopts a resolution finding "[t]he development, rehabilitation, conservation, or redevelopment, or a combination thereof, of the area or properties is necessary in the interest of the public economy, health, safety, morals, or welfare of the residents of the municipality."

In its March 1, 1993, resolution, the City Council found the proposed development property was "unused or under utilized ... zoned or ... used as an industrial or commercial site" and "[t]here exists conditions within the City ... of unemployment or underemployment and joblessness which are in fact detrimental to the economic growth of the state economy and the economy of the City...." The City Council found "[i]t is

appropriate and desirable to implement economic development programs in the City . . . to eliminate causes of underemployment, unemployment, and joblessness for the benefit of the state economy and the economy of the City and region." Noting there were feasible methods for relocating families affected by the project "without undue hardship," the City Council further found the "development plan, as presented, would afford a maximum opportunity, consistent with the sound needs of the municipality as a whole, for the development, rehabilitation, or redevelopment of the area by private enterprise."

■ Leevers and JB argue the trial court erred in holding the City made a valid finding of necessity as required by N.D.C.C. § 40–58–05(2) because the resolution states only that it would be "*appropriate* and *desirable* to implement economic development programs in the City. . . ." (Emphasis added). We reject this argument.

The resolution states the development plan "would afford a maximum opportunity, consistent with the *sound needs of the municipality as a whole,* for the development, rehabilitation, or redevelopment of the area by private enterprise." Although the City Council did not use the word "necessity" in the resolution, the term "necessity" is synonymous and interchangeable with the word "need," which was used in the resolution. *See In re Houghtaling's Estate,* 208 Misc. 129, 143 N.Y.S.2d 87, 89 (1955). The resolution is not legally invalid because the City Council said the development plan was consistent with the sound "needs" of the municipality rather than the plan was "necessary" for the welfare of the municipality.

■ The purported necessity for any taking of private property is subject to limited judicial review. *Oakes Municipal Airport Auth. v. Wiese,* 265 N.W.2d 697, 699 (N.D. 1978). In reviewing a decision by a local legislative body, we have said a court cannot substitute its judgment for that of the body, but rather must determine whether the body erroneously exercised its discretion. *Water Resource Dist. v. Burleigh County,* 510 N.W.2d 624, 627 (N.D.1994). Leaving the manner and means of exercising municipal powers to the discretion of municipal authori-

ties implies a range of reasonableness within which a municipality's exercise of discretion will not be interfered with by the judiciary. *Haugland v. City of Bismarck,* 429 N.W.2d 449, 454 (N.D.1988). In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority in finding the property sought is necessary for a use authorized by statute, the finding will not be disturbed by the courts. *Wiese* at 700. *See also A & H Services v. City of Wahpeton,* 514 N.W.2d 855, 858 (N.D.1994). We apply the narrow and limited abuse of discretion standard of review to the City's findings in this case.

### C

■ The trial court found the City made a valid finding of necessity for the project and substantial evidence supported the City's finding:

"Evidence presented at trial showed the City found that property within the development area was zoned for industrial or commercial uses; that property within the development area was unused or underutilized; that the development of that property was necessary in the interests of the public economy, health, safety, morals, or welfare of the City residents; and that in order to carry out its powers, the City approved a development and renewal plan for the property consistent with its master plan."

The trial court also ruled that, in making these findings, the City's actions "were not arbitrary, capricious or an abuse of discretion, or run in bad faith or as a result of fraud. . . ."

Zoning maps showed the disputed property was zoned for commercial use. The City introduced letters and petitions the Mayor had received from local residents in support of attempting to entice another grocery store into Jamestown. A letter from the local Job Service office was presented at the public hearing showing the number of unemployed persons in Stutsman County. Although statistics showed the Jamestown unemployment rate had been getting lower, testimony reflected the lower rate was not from the influx

of new jobs in the area, but was from the outflow of young people moving elsewhere to find employment opportunities. Citizens were concerned about the older vacant buildings in the downtown area. The developer testified about the economic viability of downtown Jamestown:

> "Well, with the closing of that large supermarket which for many years had been the dominant supermarket in the City of Jamestown, since 1947 when the building was built by the Red Owl Corporation, that was the largest traffic draw in the downtown area, and with the closing of that store and with the development of other stores up on the interstate, principally Buffalo Mall and WalMart and K-Mart and that sort of thing, it became obvious that downtown Jamestown was going to deteriorate unless some counter balancing development were to take place, and if the traffic was going to decline, then values of the property would decline."

The evidence indicated Jamestown had a low wage base, there was an outmigration of workers, and 30 percent of the population was working multiple part-time jobs. A Job Service representative testified a new supermarket would increase the wage base for Jamestown and increase the number of people working fulltime jobs. The Mayor testified the project would attract more people to shop in downtown Jamestown and competition in the grocery store business would be helpful because he believed Leevers charged more for basic items than grocery stores in other communities. The Mayor explained:

> "Develop our downtown area, and we have a problem with the entire downtown. We got a two block area downtown. On one corner was the Zappas building. I sought and found the developer of the Zappas building, and in this case I had been seeking a grocery store for downtown and had spoken with at least two other grocery store developers, and then Mr. Bernabucci came along with this planned program. So I felt that it would be a good cornerstone for the redevelopment of downtown. I also felt that competition in the grocery store business was needed in Jamestown."

Although Leevers and JB used their property as a parking lot, they had no future plans for further development of that property, thus rendering it underutilized in the eyes of City Council members. The two parcels of disputed property were relatively small and located in the middle of the proposed development.

Leevers and JB have failed to demonstrate bad faith or fraud on the part of the City. We conclude the City did not abuse its discretion in finding the taking of the disputed property is necessary in the interests of the public economy, health and welfare of its residents.

### D

▋ Leevers and JB suggest the City can only rely on evidence presented to the City Council at the public hearing. The trial court properly ruled it could review additional evidence presented at trial in deciding whether the City Council abused its discretion in finding the taking was necessary. *See, e.g., Tayloe v. City of Wahpeton,* 62 N.W.2d 31, 39 (N.D.1953); *Sea Watch, Inc. v. Manasquan,* 186 N.J.Super. 25, 451 A.2d 192, 196 (1982); 5 McQuillin, Municipal Corporations § 18.06, at p. 436 (3rd ed.1989). *Compare* N.D.C.C. § 28-34-01(3) (additional evidence may be taken, heard and considered upon review of decision of local governing body).

Leevers and JB also rely on *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) for the proposition the City Council's findings are "conclusory" and "constitutionally insufficient." In *Dolan,* the Supreme Court rejected as unconstitutional the city's dedication of a 15-foot strip of land as a pedestrian/bicycle pathway without individualized determinations of the reasonable relationship of the dedication to the legitimate public purposes of flood control and reduction of traffic congestion. The Court stated "[n]o precise mathematical calculation is required, but the city must make some effort to quantify its findings in support of the dedication for the pedestrian/bicycle pathway beyond the conclusory statement that it could offset some of the traffic demand generated." *Dolan,* 512 U.S. at ——, 114 S.Ct. at 2322. The Court, however, sug-

gested the city's finding would have been cured with an equally conclusory finding the bicycle pathway system will, or is likely to, offset some traffic demand. *Dolan.* Here, the City Council found the development project was necessary for the economic welfare of its citizens, a valid public purpose. *Dolan* does not support the argument the City Council's findings are constitutionally insufficient. We conclude the findings are sufficient in this case.

### III

Leevers and JB contend the City's taking of their property is actually for the benefit of the private developer, Northern, and therefore the taking cannot be necessary for a "public use."

### A

■ Generally, if a use for which property is taken is public, the taking is not invalid merely because of an incidental benefit to private individuals. *See* 2A *Nichols,* § 7.03[5][a]. This established principle is explained in 2A *Nichols,* § 7.07[1], at p. 7–280 (footnotes omitted).

> "Eminent domain may not be used to assist private individuals to cultivate their land or carry on their business to a better private advantage. This is true if the sole or primary object of the use of eminent domain is to secure the private interests of some party, even if the community benefits as a result. At this point the use of eminent domain is unconstitutional.

> "However, eminent domain may be used to help a private enterprise if the primary goal of the taking leads to a project that will eventually promote the public welfare or advantage. Even if there is some incidental private benefit to the business, so long as the primary benefit is to the public, then the use for which the land is taken is one that is public."

In the past, several courts have refused to sanction takings that benefited private economic development, finding the taking to be for a private rather than for a public purpose. *See, e.g., Townsend Grace & Co. v. Epstein,* 93 Md. 537, 49 A. 629 (1901) (ordinance authorizing construction of passage-

way across street to connect two stores owned by private individual was invalid because it furthered private rather than public purpose); *Neitzel v. Spokane International Railway Co.,* 65 Wash. 100, 117 P. 864 (1911) (railroad company could not condemn land for public use and rent it to a wholesale grocery company); *Baycol, Inc. v. Downtown Development Authority,* 315 So.2d 451, 458 (Fla.1975) (where primary purpose of acquiring downtown property was for private development of shopping center, eminent domain could not be used because acquisition was not for public use); *Petition of City of Seattle,* 96 Wash.2d 616, 638 P.2d 549, 559 (1981) ("no statutory authority to establish or to condemn property for an urban 'focal point', or an urban shopping center, or facilities to be leased for private use as retail establishments, restaurants, or theaters."); *Merrill v. City of Manchester,* 127 N.H. 234, 499 A.2d 216 (1985) (the intended development of an industrial park would not directly benefit the public and the City could not condemn two industrially-zoned agricultural tracts because it would not be for a public purpose). *See generally* Annot., *Eminent domain: industrial park or similar development as public use justifying condemnation of private property,* 62 A.L.R.4th 1183, § 4 (1988).

According to 2A *Nichols* § 7.06[24][c], at p. 7–242, however, the growing "trend[ ]" appears to "sanction[ ] broad legislative discretion to use eminent domain for a variety of economic development purposes." For example, in *Poletown Neighborhood Council v. Detroit,* 410 Mich. 616, 304 N.W.2d 455 (1981), the Michigan Supreme Court upheld the City of Detroit's use of the eminent domain power to take private property and turn it over to General Motors Corporation for the construction of an automobile assembly plant. The eminent domain authority was exercised under legislation similar to N.D.C.C. § 40–58–02. The dispute in the case was "whether the proposed condemnation [was] for the primary benefit of the public or the private user." *Poletown,* 304 N.W.2d at 458.

The court noted its role in determining whether the city's action met a public need

and served an essential public purpose was limited to deciding whether the city's action was "'palpable and manifestly arbitrary and incorrect.'" *Poletown,* 304 N.W.2d at 459 (quoting *Gregory Marina, Inc. v. Detroit,* 378 Mich. 364, 144 N.W.2d 503, 516 (1966)). The limited review was warranted because the legislature had determined the government conduct proposed by the city served "an essential public purpose[ ]," the legislature expressly delegated to municipalities the authority to determine if a proposed project constituted a public purpose, and the city followed all procedures established by the enabling statute. *Poletown,* 304 N.W.2d at 458–459. Nevertheless, the court cautioned,

"Where, as here, the condemnation power is exercised in a way that benefits specific and identifiable private interests, a court inspects with heightened scrutiny the claim that the public interest is the predominant interest being advanced. Such public benefit cannot be speculative or marginal but must be clear and significant if it is to be within the legitimate purpose as stated by the Legislature."

*Poletown,* 304 N.W.2d at 459–460.

The court held the proposed project was a valid exercise of the city's power of eminent domain because the benefit to the municipality was "clear and significant," the type of project was an intended and legitimate object of the legislature, the power to take the proposed action was expressly delegated to the municipality, and the public benefit of "alleviating unemployment and revitalizing the economic base of the community" predominated over the benefits received by the private party. *Poletown* at 459–460.

Michigan lower court decisions have not reached uniform results in applying the *Poletown* analysis. *Compare City of Center Line v. Chmelko,* 164 Mich.App. 251, 416 N.W.2d 401, 402 (1987) (condemnation of private land to convey to private developer for commercial purposes was an unconstitutional taking for a private purpose because reasons given by City were a "complete fiction" and record showed City acted as agent for private interest, a local car dealership), with *Detroit Edison Co. v. Detroit,* 208 Mich.App. 26, 527 N.W.2d 9, 11 (1994) (City's acquisition of property so Chrysler Corporation could construct automobile assembly plant, thereby providing jobs to the City and stabilizing its tax base, was for public purpose) and *City of Detroit v. Vavro,* 177 Mich.App. 682, 442 N.W.2d 730, 731 (1989) (same).

The Minnesota Supreme Court reached a similar result in *City of Duluth v. State,* 390 N.W.2d 757 (Minn.1986), upholding a city condemnation of property to replace a nonoperating Chun King Oriental Food processing plant with a papermill. The landowners had planned to reopen the food processing plant sometime in the future. Under Minn.Stat. Ann. § 472A.03 (currently Minn.Stat. Ann. § 469.126 (1994)), a municipality could use eminent domain to acquire "developments aimed at improving the physical facilities, quality of life and quality of transportation" consistent with a development program for a designated district.

Applying a limited, arbitrary and capricious standard of review to the city's decision, the court held the proposed project satisfied the constitutional public use requirement even though it also benefited private interests. The court noted "alleviation of unemployment" is a legitimate public goal and the city had "introduced evidence that the mill would provide permanent and temporary employment in an economically distressed area of the state." *Duluth* at 763. The court cautioned its "decision might be different if the Chun King plant were actually in operation employing the 500 people contemplated. However, we must accept conditions as they are today." *Duluth* at 766. Other decisions are in accord. *See, e.g., Rosenthal & Rosenthal Inc. v. N.Y. State Urban,* 771 F.2d 44, 45–46 (2d Cir.1985), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986) (even though condemned property was structurally sound and fully utilized and would be transferred to private developers, taking was for legitimate public purpose); *Sunrise Properties v. Jamestown U.R.A.,* 206 A.D.2d 913, 614 N.Y.S.2d 841, 842 (1994) (urban renewal agency's finding condemnation of underutilized property would create jobs, provide infrastructure, and possibly stimulate new private sector economic develop-

ment established taking was for public purpose even though private party would also benefit). *See generally* Annot., 64 A.L.R.4th 1183, §§ 3 and 6.

█ This Court has said, in *Square Butte* at 523 (quoting *Montana Power Company v. Bokma*, 153 Mont. 390, 457 P.2d 769, 772–773 (1969)), a public use requires a "public advantage" or a "public benefit."

### B

█ As noted above, for the taking to be valid, the project must be primarily for a public rather than private purpose. *See Poletown*, 304 N.W.2d at 458, 2A *Nichols*, § 7.07[1]. In this case, the trial court made no finding whether the primary object of this development project is for the economic welfare of downtown Jamestown and its residents rather than for the benefit of the private interests. The trial court erroneously failed to address this question. Absent a finding on this question, a determination of whether the "public use" requirement under the state and federal constitutions has been satisfied cannot be made.

We therefore reverse the judgment and remand for the trial court to make the necessary finding on this issue. If the court makes the necessary finding the *primary* object of this development is for the economic welfare of the City and its residents, rather than for the primary benefit of private interests, then it should reinstate the judgment of taking and awarding the just compensation to Leevers and JB for the taking. If the court finds the primary object of this development is for the benefit of private interests, it must refuse to allow the taking.

### IV

█ Under N.D.C.C. § 32–15–06.1(1), a condemnor must "make every reasonable and diligent effort to acquire property by negotiation." Leevers and JB assert the trial court's finding the City complied with this statutory directive is clearly erroneous because eminent domain was threatened before any offers were made to purchase their property.

The trial court found "while there was testimony that individuals in the early stages did refer to the fact that the City had the power of eminent domain, the evidence is also replete with efforts on the part of the City to negotiate a purchase in lieu of using eminent domain." The record supports the trial court's finding.

Numerous documents in the record demonstrate the City tried to acquire the property without having to resort to the use of its eminent domain power. Both the City and the developer had ongoing negotiations with Leevers and JB. They agreed on the purchase price for the property, but negotiations failed over a tax issue. We conclude the trial court's finding the City made reasonable and diligent efforts to acquire the property by negotiation is not clearly erroneous.

### V

█ Leevers and JB contend the trial court erred in accepting the valuations of the property given by the City's expert appraiser and rejecting the valuations given by their expert appraiser. The trial court noted N.D.C.C. § 32–15–01(2) provides "no benefit to accrue from the proposed improvement shall be allowed in ascertaining the compensation to be made" for the property and N.D.C.C. § 32–15–06.1(3) provides "[i]n establishing the amount believed to be just compensation, the condemnor shall disregard any decrease or increase in the fair market value of the property caused by the project for which the property is to be acquired or by the reasonable likelihood that the property will be acquired for that project...." The trial court viewed these statutes as declaring any enhanced value to the property caused by the project could not be properly considered in assessing condemnation damages.

█ The parties stipulated to a bench trial on damages. The amount of damages in an eminent domain action is a question of fact to be decided by the trier of fact. *City of Devils Lake v. Davis*, 480 N.W.2d 720, 725 (N.D.1992). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if the appellate court is left with a definite and firm conviction that a mistake has been made. *Sargent County Bank v. Wentworth*,

547 N.W.2d 753, 758 (N.D.1996). We ordinarily sustain an award of damages if it is within the range of the evidence presented to the trier of fact. *City of Hazelton v. Daugherty,* 275 N.W.2d 624, 627 (N.D.1979).

Here, the trial court correctly ruled N.D.C.C. §§ 32–15–01(2) and 32–15–06.1(3) precluded consideration of enhanced value. Leevers and JB argued comparable sales figures used by their expert appraiser were sales between willing buyers and sellers and the amount of compensation paid to the sellers was not enhanced value that resulted from the proposed project. The City questioned the comparable sales used by Leevers' and JB's appraiser and argued they reflected enhanced value resulting from the proposed project. Leevers and JB conceded the market value found by their appraiser "does not differ very much" from the market value found by the City's appraiser.

The award in this case is within the limits of the damages testified to by the expert appraisers. We conclude the trial court's award of damages is not clearly erroneous.

## VI

Leevers and JB contend the trial court erred in awarding the City costs for its appraiser's fees and expenses.

Under N.D.C.C. § 32–15–32, a court may award a "defendant" in an eminent domain proceeding "reasonable actual or statutory costs or both." The statute says nothing about assessing trial court costs against the defendant. The City argues the fees and expenses are authorized by N.D.R.Civ.P. 54(e) and N.D.C.C. § 28–26–06(5) as general costs to a prevailing party.

In *Gissel v. Kenmare Tp.,* 512 N.W.2d 470, 475–476 (N.D.1994), we ruled the generalized cost-shifting provisions of N.D.R.Civ.P. 68(a) do not apply to an inverse condemnation action under N.D.C.C. Chapter 32–15:

"Section 32–15–33, N.D.C.C., provides that '[e]xcept as otherwise provided in this chapter, the provisions of the North Dakota Rules of Civil Procedure are applicable to' and constitute the rules of practice in' eminent domain proceedings under Chapter 32–15, N.D.C.C. *See Northern Pacific Railway Co. v. Morton County,* 131 N.W.2d 557 (N.D.1964). However, Rule 81(a), N.D.R.Civ.P., excepts special statutory proceedings, including eminent domain proceedings under Chapter 32–15, N.D.C.C., from the rules of civil procedure insofar as the special statutory proceedings conflict with the rules."

Because the provisions for cost shifting in N.D.C.C. § 32–15–32 were "specific" and were "'as otherwise provided in'" N.D.C.C. Chapter 32–15, we held the generalized cost-shifting provisions of N.D.R.Civ.P. 68(a) do not apply to eminent domain proceedings. *Gissel* at 477. For like reasons, we conclude N.D.R.Civ.P. 54(e) and N.D.C.C. § 28–26–06(5) do not apply in this case.

We conclude the trial court had no statutory authority in this eminent domain proceeding to assess against Leevers and JB the costs and fees of the City's expert appraiser.

## VII

We reverse the judgment condemning the property of Leevers and JB and granting the City rights to the property and remand for a finding on the private versus public use issue. We also reverse the judgment ordering Leevers and JB to pay the fees and expenses of the City's appraiser.

VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.