1997 ND 190

**CITY OF MEDORA, North Dakota, a Municipal Corporation, Plaintiff and Appellee,**

v.

**Gerald GOLBERG, Betty Golberg and Mary Schneider, Defendants and Appellants.**

**Civil No. 970066.**

Supreme Court of North Dakota.

Sept. 30, 1997.

Ronald A. Reichert (argued), of Reichert & Herauf, P.C., Dickinson, for plaintiff and appellee.

Michael J. Maus (argued), of Howe, Hardy, Galloway & Maus, Dickinson, for defendants and appellants.

NEUMANN, Justice.

[¶ 1] Gerald Golberg, Betty Golberg, and Mary Schneider appealed from an eminent domain judgment granting the City of Medora roadway and utility easements over their property and awarding them $16,700 in damages and $14,286.43 in attorneys fees, costs, and expert witness fees. We affirm the taking decision, and we reverse the award of attorneys fees and remand for a redetermination of reasonable attorneys fees.

[¶ 2] The Golbergs and their daughter, Schneider, own a campground on the south side of Medora. Their land includes a road which provides access from East River Road to the campground and to two other private residences. The road runs north and south along the east side of the campground and turns east to provide access to the two private residences before it stops at a dead end. The only access to the two private residences is by the road, and those residents have an easement to use the road. The property owners on the east side of the road have access from the east and do not use the road.

[¶ 3] In 1992 the City sued the Golbergs, seeking to declare the road a public road by prescription. The City alternatively sought to declare the road necessary for a public use in an eminent domain proceeding and to obtain roadway and utility easements.[1] The trial court bifurcated the prescription and the eminent domain proceedings. After a bench trial, the court ruled the City had failed to prove adverse use of the road for the prior 20 years and dismissed with prejudice the City's prescription claim.

[¶ 4] While the action was pending, the Golbergs deeded Schneider a 20 percent interest in the property, and she was allowed to intervene as a defendant in the eminent domain proceeding. The court ruled the City's proposed taking was necessary for an authorized public use under N.D.C.C. Ch. 32–15 and N.D.C.C. §§ 40–05–01 and 40–05–02. A jury thereafter awarded the Golbergs and Schneider $16,770 in just compensation for the taking. The Golbergs and Schneider subsequently sought more than $30,000 for attorneys fees, costs and expenses under N.D.C.C. § 32–15–32. The court awarded them attorneys fees of $10,000, statutory costs of $1,630.43, and expert witness fees of $2,656. The Golbergs and Schneider appealed.

[¶ 5] The Golbergs and Schneider contend the trial court erred in deciding the taking of the road was necessary for a public use. They argue

"the overall character of the use to be made of the property to be taken is one of private benefit as opposed to public benefit. The road way services the camp-

---

1. Although this record does not include a formal City Council resolution authorizing this action, an affidavit of Derwin Zuroff, the President of the City Council, says the City Council approved the prescription and the eminent domain litigation. Because the Golbergs and Schneider did not complain in the trial court about the City's failure to introduce into evidence a formal resolution authorizing the action, we do not further address the issue. *See City of Jamestown v. Leevers Supermarkets, Inc.*, 552 N.W.2d 365, 368 n. 1 (N.D.1996).

ground and other property owned by the Defendants and two private residences. That is all. There is no connection with any other public street. The [two private] residences . . . each have permanent easements to use the road and these easements run with this property. . . .

"City utility and emergency vehicles have always been permitted the use of this road."

[¶ 6] Eminent domain is the right to take private property for a public use. N.D.C.C. § 32–15–01(1). Private property cannot be taken for a public use without payment of just compensation to the owner. N.D. Const. Art. I, § 16; N.D.C.C. § 32–15–01(2). Before an authorized entity may take private property for public use, the proposed use must be authorized by law and the taking must be necessary for the public use. N.D.C.C. § 32–15–05.

■ [¶ 7] Here, the proposed uses for the property are easements for a public roadway and for water, sewer, utilities, and cable television. Municipalities are authorized "[t]o lay out, establish, open, alter, repair, clean, widen, vacate, grade, pave, park, or otherwise improve and regulate the use of streets . . . and to prevent and regulate obstructions and encroachments upon [streets]." N.D.C.C. § 40–05–01(8). Municipalities also have the power "[t]o regulate the laying of gas or water mains and pipes, and the building, laying, or repairing of sewers, tunnels, and drains, and the erecting of gas and electric light plants, . . . [t]o purchase, acquire by eminent domain, erect, lease, rent, manage, and maintain any system of waterworks, . . . to acquire by purchase, lease, gift, or condemnation the necessary lands, rights of way, and easements for [sewage disposal]." N.D.C.C. § 40–05–01(12), (36), and (59).

[¶ 8] The Legislature has unambiguously authorized the taking of private property for the uses proposed in this case. Although there is a presumption a use is public when the Legislature has declared it to be and we treat the Legislature's decision with the deference due a coordinate branch of government, we have said the ultimate decision regarding whether a proposed use of property is, in fact, a public use is a judicial question. *City of Jamestown v. Leevers Supermarkets, Inc.*, 552 N.W.2d 365, 369 (N.D. 1996). *See Square Butte Elec. Co-op. v. Hilken*, 244 N.W.2d 519, 523 (N.D.1976); *Northern Pacific Ry. Co. v. Kreszeszewski*, 17 N.D. 203, 115 N.W. 679, 681 (1908); *Bigelow v. Draper*, 6 N.D. 152, 69 N.W. 570, 574 (1896). *See generally* 2A J. Sackman and P. Rohan, *Nichols on Eminent Domain* § 7.03[11] (Rev. 3rd Ed.1997) ("[t]he question of whether a legislative determination of a public use is really public has been declared by the courts ultimately to be a judicial one.").

[¶ 9] Generally, there are two lines of authority for deciding if a proposed use is a public use. 2A *Nichols* at §§ 7.02[2] and [3]. A limited view requires actual use or the right to use the proposed property by the public as a whole, while a broader view requires only a use conferring a public advantage or a public benefit. *Id. See Square Butte*, 244 N.W.2d at 523, citing *Montana Power Co. v. Bokma*, 153 Mont. 390, 457 P.2d 769, 772–73 (1969).

[¶ 10] We applied the broad view of public use in *Leevers Supermarkets*, 552 N.W.2d at 374, where we cited *Square Butte*, 244 N.W.2d at 523, for the principle a public use requires a public advantage or a public benefit.[2] In *Leevers Supermarkets*, 552 N.W.2d

2. The Golbergs and Schneider rely on *Square Butte*, 244 N.W.2d at 525, to argue the public must derive a substantial and direct benefit from the proposed use. *Square Butte* involved a public use analysis for an electric cooperative seeking a transmission line easement across North Dakota to provide service to Duluth, Minnesota. The issue was whether the taking of the transmission line easement across North Dakota was for a public use. We quoted with approval from *Adams v. Greenwich Water Co.*, 138 Conn. 205, 83 A.2d 177, 182 (1951), "[i]f the taking is for a public use which will provide a substantial and direct benefit to the people of the state which authorizes it, it is a proper exercise of the power of eminent domain even though it also benefits the residents of another state." *Square Butte*, 244 N.W.2d at 524. In *Square Butte*, 244 N.W.2d at 525, we analyzed the proposed public use to decide if the benefits alleged by the interstate electric cooperative provided, either singly or in unison, a substantial and direct benefit to North Dakota. Those interstate considerations for public use are not present in this eminent domain proceeding.

at 369, we held the City of Jamestown's proposed stimulation of commercial growth and removal of economic stagnation were objectives satisfying the requirement for a public use.

[¶ 11] Here, the proposed uses of the property are easements for a public roadway and for utilities, water, sewer, and cable television. Providing roadways, sewer, and water serves a basic government function. *See* 2A *Nichols* at §§ 7.06[4] (public highways), 7.06[20] (water supply), and 7.06[21] (sewers). It cannot seriously be argued those uses do not provide a public advantage or public benefit. We conclude these easements provide a public advantage or public benefit under the public use requirement.

[¶ 12] This conclusion, however, does not end our inquiry, because a taking also must be necessary for the proposed public use. N.D.C.C. § 32–15–05(2). The Golbergs and Schneider contend their road was taken predominantly for a private use, because the two other residences served by the road already have easements to use it. They also argue they have provided the City with access to maintain water, sewer, utility, and cable television lines. The Golbergs and Schneider effectively argue the location and nature of the road leads to only one conclusion—the taking was not necessary for a public use.

[¶ 13] The purported necessity for a taking of private property is subject to limited judicial review. *Leevers Supermarkets,* 552 N.W.2d at 370. In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority, a decision the property sought is necessary for an authorized public use will not be disturbed by the courts. *Id.* In *Leevers Supermarkets,* 552 N.W.2d at 370, we applied the abuse of discretion standard to review the City's decision a taking was necessary for a public use.

[¶ 14] Here, there was evidence the Golbergs had, on one occasion, blocked the road. There also was some evidence the Golbergs had not always provided snow removal during the winter, and the City needed access for garbage pickup and other emergency services. The Golbergs and Schneider claim they would permit use of the road for

those purposes. The need for those permissive uses, however, suggests a necessity for a public use. Under the broader view of public use, it is not necessary for the public as a whole to use the easements in order for the taking of those easements to be necessary for a public advantage or a public benefit. The City is vested with a wide range of discretion in exercising this governmental function, and we are not persuaded the Golbergs and Schneider have demonstrated bad faith, fraud, or a gross abuse of discretion by the City in deciding the taking of these easements was necessary for a valid public use.

[¶ 15] The Golbergs and Schneider also argue the claimed public use is not compatible with the greatest public benefit and the least private injury. Land taken for a public use must be located in the manner compatible with the greatest public benefit and the least private injury. N.D.C.C. § 32–15–06. If there has been a carefully considered good faith selection of a location by a condemning authority, courts generally will not interfere with the actual location of the property condemned. *Gissel v. Kenmare Tp.,* 512 N.W.2d 470, 474 (N.D.1994); *Northern States Power Co. v. Effertz,* 94 N.W.2d 288, 291 (N.D.1958).

[¶ 16] We decline to second guess the City for choosing this route for the easements. There was already a road in place on this site, and the City had utility easements over part of the land. The City was entitled to consider those factors in choosing this site for the easements. We hold the City did not abuse its discretion in deciding the taking of these easements was necessary for a valid public purpose. We therefore affirm the taking.

[¶ 17] The Golbergs and Schneider contend the trial court erred in reducing their request for attorneys fees from $27,040 to $10,000. They argue the court erred in deciding attorneys fees should be proportionate to the damages awarded in the eminent domain action. They contend their requested attorneys fees were approximately the same as those incurred by the City during the same time period.

[¶ 18] Section 32–15–32, N.D.C.C., authorizes the court, in its discretion, to award a defendant reasonable attorneys fees for all judicial proceedings in an eminent domain action. We review a trial court's decision on attorneys fees under the abuse of discretion standard. *City of Devils Lake v. Davis*, 480 N.W.2d 720, 726 (N.D.1992). A trial court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, or if it misinterprets or misapplies the law. *E.g. Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 16 (N.D.1995).

[¶ 19] In *City of Bismarck v. Thom*, 261 N.W.2d 640, 646 (N.D.1977), we outlined the procedure for setting attorneys fees in eminent domain actions:

"[I]n determining a reasonable fee the trial judge must first determine the number of hours expended. Whenever possible his findings should be made upon contemporaneous records, and when such records are not available, then upon reasonable reconstruction or estimates of time amounts. The trial judge must then assign specific hourly rates based upon the attorney's experience and reputation which will constitute the 'lodestar.' The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney.

"The trial court or judge should also consider the character of the services rendered, the results which the attorney obtained, and the customary fee charged in the locality for such services, as well as the ability and skill of the attorney. The court should not rely on any single item in determining reasonable attorney fees. The number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees."

[¶ 20] Under *Thom*, no single factor is dispositive for an award of reasonable attorneys fees, but the court must first decide the number of hours reasonably expended and a reasonable hourly rate. We have followed this "lodestar" procedure in other contexts. *Duchscherer*, 534 N.W.2d at 20 (applying lodestar procedure to award attorneys fees

under federal law for violation of odometer disclosure requirement). In *Duchscherer*, 534 N.W.2d at 19, we also said a comparison of hours and rates by opposing counsel is often probative of the reasonableness of a request for attorneys fees by prevailing counsel.

[¶ 21] Here, the trial court ruled:

"[Relying on] the factors enunciated in *City of Bismarck v. Thom*, 261 N.W.2d 640 (N.D.1977) and establishing some proportionality between the amount of damages and the amount of attorneys' fees, I found that there was nothing novel about this condemnation. It was straightforward, and there were no difficult questions of law. All parties were represented by skillful, competent counsel and the hourly rate is not disproportionate between the parties.

"Considering the fees in proportion to the amount awarded, attorneys' fees and costs to the Defendants' attorneys are hereby awarded in the sum of $10,000.00."

[¶ 22] The trial court did not decide the hours reasonably expended or a reasonable hourly rate. Rather, the court awarded attorneys fees based, at least in part, upon proportionality to the jury verdict. The court's proportionality analysis is not authorized by our caselaw and could have a chilling effect when the owner of a small parcel of land resists condemnation of the land. To the extent a proportionality analysis may implicate consideration of the results obtained, the court overlooked the City initially deposited about $2,000 for the taking, but the jury ultimately awarded $16,700 in just compensation. A comparison between the amount of the award and the initial deposit is a relevant consideration in awarding attorneys fees. *Davis*, 480 N.W.2d at 727 (in assessing results obtained, property owner entitled to have attorneys fees decided in light of the difference between the amount of the award and the initial deposit). The result an attorney obtains for a client, the customary fee charged, and the number of hours expended are significant factors which should be weighed together with all the other *Thom* factors in deciding reasonable attorneys fees. *Davis*, 480 N.W.2d at 727. Of

course, it is essential that the prevailing party, and the court, if need be, exclude any hours that are excessive, redundant, or otherwise unnecessary. *Duchscherer*, 534 N.W.2d at 19. Here, however, the court reduced the requested attorneys fees on the basis of proportionality to the jury verdict without explaining what work was deemed unreasonable and why it was unreasonable. We conclude the trial court misapplied the law in reducing the requested attorneys fees on the basis of proportionality without weighing all of the *Thom* factors together to decide reasonable attorneys fees. We therefore reverse the award of attorneys fees and remand for redetermination of reasonable attorneys fees.[3]

[¶ 23] We affirm the taking, reverse the award of attorneys fees and remand for a redetermination of reasonable attorneys fees.

[¶ 24] VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.

---

**3.** The City has not argued the Golbergs and Schneider are not entitled to attorneys fees for the prescription part of these proceedings. They ordinarily would not be entitled to attorneys fees for defending a prescription action. However, the foundational facts for the trial court's decision that the taking was necessary for a public use was based on evidence presented during the prescription proceeding, and because of the interrelationship of the two proceedings, the defendants are not precluded from receiving attorneys fees for those proceedings. *See Gissel*, 512 N.W.2d at 477–78 (sustaining award of attorneys fees for proceedings intertwined with condemnation action).