Filed 10/9/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 228

Cass County Joint Water Resource District, 

a North Dakota Political Subdivision, Plaintiff, Appellee,

 and Cross-Appellant

v.

Curtis W. Erickson, Karen S. Erickson, Defendants, Appellants,

 and Cross-Appellees

and

Choice Financial Group, Defendant

No. 20180028

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Christopher M. McShane (argued) and Andrew D. Cook (on brief), Fargo, ND, for plaintiff, appellee, and cross-appellant.

Michael T. Andrews, Fargo, ND, for defendants, appellants, and cross-

appellees.

Cass County Joint Water Resource District v. Erickson

No. 20180028

McEvers, Justice.

[¶1] Curtis and Karen Erickson appeal and the Cass County Joint Water Resource District cross-appeal from a judgment entered after the district court ordered condemnation of the Ericksons’ properties, determined the amount of just compensation, and awarded the Ericksons’ attorney fees and costs.  We conclude the court’s damage award is not clearly erroneous and the court did not abuse its discretion by awarding fees and costs.  We affirm the judgment.

I

[¶2] In 2005, the Ericksons purchased two adjoining lots, lots 39 and 40, in Oxbow Country Club and Estates located in Cass County.  Both lots have views of the Red River and lot 40 has river frontage.  The Ericksons paid a total of $150,000 for the two lots.  In 2006 or 2007, the Ericksons listed the lots for sale, asking approximately $100,000 for each lot.  They did not receive an acceptable offer to purchase either lot.

[¶3] In 2009, significant flooding occurred in portions of the Red River Valley, including the Oxbow area.  Red River Valley governmental authorities, including the District, designed a flood control and protection project referred to as the Diversion Project, which included the creation of the Oxbow Hickson Bakke Ring Levee (“OHB Ring Levee”).  The Ericksons’ properties would have to be acquired to construct the OHB Ring Levee.

[¶4] In a March 2015 letter, the District offered to acquire both properties from the Ericksons for $48,200 based on an appraisal by GE Bock Real Estate, LLC.  Although the Ericksons rejected the offer, in May 2015 they reached an agreement with the District for entry and construction.  The parties agreed the District would have the right to enter and access the properties for construction of the OHB Ring Levee, the parties would continue to negotiate the amount of compensation for the properties, and the District would start an eminent domain action if the parties were unable to reach an agreement on the amount of compensation.  The parties also agreed the only issue that would be resolved in an eminent domain action would be the amount of compensation owed to the Ericksons.  In a February 3, 2016 letter, the District stated it was making its “final offer” and offered the Ericksons $150,000 for both lots.  The Ericksons rejected the offer.

[¶5] The parties were unable to reach an agreement on the amount of compensation, and the District brought an eminent domain action.  Before trial, the parties entered a stipulation agreeing the date of taking was May 14, 2015.  A bench trial was held.  Each party presented evidence about the value of the properties, including testimony from appraisers.  The district court found the Ericksons were entitled to just compensation for the properties in the amount of $48,200.  The Ericksons moved for attorney fees and costs under N.D.C.C. § 32-15-32.  The District opposed the request, arguing the requested amount of attorney fees and costs was unreasonable.  The court granted the Ericksons’ motion and ordered the District to pay the Ericksons $114,346.47 in fees and costs.

II

[¶6] The Ericksons argue the district court erred in determining the amount of just compensation.  They contend the court failed to properly compensate them for the properties’ “highest and best use.”

[¶7] Under N.D.C.C. § 32-15-01(2), “Private property may not be taken or damaged for public use without just compensation first having been made to or paid into court for the owner.”  An owner whose property has been taken by condemnation is entitled to the fair market value of the property taken.  
See City of Devils Lake v. Davis
, 480 N.W.2d 720, 725 (N.D. 1992).  This Court has defined “fair market value” as “the highest price property can be sold for in the open market by a willing seller to a willing purchaser, neither acting under compulsion and both exercising reasonable judgment.”  
City of Hazelton v. Daugherty
, 275 N.W.2d 624, 627 (N.D. 1979).  “For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the taking and its actual value at that date shall be the measure of compensation for all property actually to be taken . . . .”  N.D.C.C. § 32-

15-23.

[¶8] The amount of damages in an eminent domain action is a question of fact, subject to the clearly erroneous standard of review.  
City of Jamestown v. Leevers Supermarkets, Inc.
, 552 N.W.2d 365, 374 (N.D. 1996).  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if this Court is left with a definite and firm conviction that a mistake has been made.  
Id.
  The evidence is viewed in the light most favorable to the verdict, and generally a compensation or damages award will be sustained if it is within the range of evidence presented to the trier of fact.  
Davis
, 480 N.W.2d at 725.  The trial court has discretion in deciding the admissibility of evidence about the value of the land, including determining the relevance of evidence about the value and comparability of other properties.  
See Minot Sand & Gravel Co. v. Hjelle
, 231 N.W.2d 716, 727 (N.D. 1975).

[¶9] The district court considered the evidence the parties presented at trial, including the appraisals and testimony from both parties’ appraisers.  The court found the District received three different appraisals from Gerald Bock of GE Bock Real Estate Company, LLC.  Bock’s first appraisal dated March 9, 2015, appraised the  properties at $48,200 for both properties after deciding that the highest and best use of the properties was for a vacant residential lot that had a high flood risk.  The court also noted the appraisal stated the properties were appraised as if the highest and best use was for open space or seasonal recreational use.  The second appraisal was dated January 11, 2017, and resulted in a lower valuation of $37,100 based upon information from a soil report commissioned and supplied by the District, which the parties refer to as the Barr report.  On May 31, 2017, Bock appraised the properties a third time and concluded the value of the properties was $37,100 based on the highest and best use as vacant for open space or recreational use, the appraisal also referenced the Barr report and stated the properties may be affected by adverse soil conditions.  The court found the Ericksons provided an appraisal from James J. Wise, an appraiser for EB Herman Companies.  The Ericksons’ appraisal determined the properties’ total market value was $456,000 based on the highest and best use of development with single family residential uses on each lot.  The court noted the appraiser used flood protected properties as comparable sales and the properties in this case are not flood protected.

[¶10] The district court found the market value of the two properties as of the date of the taking, May 14, 2015, was $48,200 based on the first Bock appraisal.  The court found the highest and best use would be for a modest home on one of the lots.  The court found the Ericksons did not meet the burden of showing a valuation greater than $48,200.  The court found the Ericksons’ appraiser revealed through his testimony that he was not as knowledgeable about real estate sales in the Red River Valley as he should be and he used flood protected properties as comparables when the properties in question were not flood protected.  The court found the generally known conditions of the lots and past flooding greatly reduced the value of the properties from the date the Ericksons acquired the lots to the date of the taking.  The court stated its valuation was not based on any enhancement or reduction in value attributable to the project.  The court explained it did not base its decision on Bock’s second or third appraisals because those appraisals were based on information about soil stability from the Barr report.  The court found soil stability was a concern from the time the Ericksons purchased the lots but it was unlikely a buyer would have commissioned a report similar to the Barr report, and therefore it was not acceptable to use the report to diminish the value of the properties.

A

[¶11] The Ericksons argue the district court failed to properly compensate them for their properties’ “highest and best use.”  They contend the court erred by determining the level of compensation based on a “recreational” value because the lots were zoned for residential construction with no prohibitions, the lots were “adaptable” to residential construction, the Bock appraisal concluded the lots were adaptable to residential construction, and the highest and best use for the lots was residential development.

[¶12] In
 Frederickson v. Hjelle
, 149 N.W.2d 733, 744 (N.D. 1967), this Court said, “in a condemnation action, compensation is not to be estimated simply with reference to the value of the land to the owner for the purpose it is then used, but with reference to what its present value is in view of the uses to which it is reasonably capable of being put.”  The party claiming damages has the burden of proof to establish the amount of damages incurred.  
Dutchuk v. Bd. of Cty. Comm’rs, Billings Cty.
, 429 N.W.2d 21, 23 (N.D. Ct. App. 1988); 
Daugherty
, 275 N.W.2d at 627.  If the landowner claims the land being taken is not currently being used at its highest potential, the burden of proof is on the landowner to prove the highest and best use.  4 Julius L. Sackman, 
Nichols on Eminent Domain
, § 12B.14 (Matthew Bender, 3d ed. 2018); 
see also
 29A C.J.S. 
Eminent Domain 
§ 164 (2017).

[¶13] The district court found the highest and best use for the properties would be for a modest home on lot 39 because of the condition of the properties.  The parties presented evidence about the value of the properties from two appraisers, Bock and Wise.  Bock’s appraisals were based on recreational use, Wise’s appraisal was based on residential use, and the appraisals varied widely in the valuations of the properties.  The court explained that it did not base its decision on the Wise appraisal because Wise used flood protected properties as comparable sales for the subject properties which are not flood protected and Wise was not as knowledgeable about real estate sales in the Red River Valley.  The court explained it gave more weight to Bock’s testimony and appraisal because he demonstrated that he was intimately familiar with the real estate market in the Red River Valley and the comparable sales used in his appraisal appeared to be consistent with the subject properties.  The court found the Ericksons did not meet their burden of proving a valuation greater than $48,200.

[¶14] The evidence supports the court’s findings.  The first Bock appraisal report states the Ericksons’ properties have a different amount of usable site compared to other properties, they are closely adjacent to the Red River compared to other properties, the flood risk caused by the properties’ elevation has changed buyers’ perceptions and moved the market in a different direction, and “many of the properties similar to the subject adjacent to the river have been demolished or removed indicating a change in market perception of such sites.”  Wise compared the Ericksons’ properties to properties on other rivers or located in Fargo, and noted the Ericksons’ properties did not have flood protection and the other properties all have levee protection from flooding.  The court found Bock’s testimony and appraisal should be given greater weight than Wise’s appraisal.  The court made its decision based on the evidence the parties presented.

[¶15] The Ericksons had the burden to prove the highest and best use and the valuation of the properties.  “The trier of fact decides the expert witnesses’ credibility and the weight to be accorded their testimony.”  
Service Oil, Inc. v. Gjestvang
, 2015 ND 77, ¶ 20, 861 N.W.2d 490.  A district court’s choice between two permissible views of the weight of the evidence is not clearly erroneous, and we do not reweigh evidence or judge witness credibility.  
Northstar Founders, LLC v. Hayden Capital USA, LLC
, 2014 ND 200, ¶ 39, 855 N.W.2d 614.  Although the court found the best and highest use of the properties was for a modest home on one of the lots, the Ericksons failed to present sufficient credible evidence the fair market value of the properties with that potential use was greater than $48,200.

B

[¶16] The Ericksons argue the district court violated the “project influence rule” by restricting the properties’ highest and best use to a modest home on one lot based on the Barr report.

[¶17] Section 32-15-06.1(3), N.D.C.C., states:

In establishing the amount believed to be just compensation, the condemnor shall disregard any decrease or increase in the fair market value of the property caused by the project for which the property is to be acquired or by the reasonable likelihood that the property will be acquired for that project, other than a decrease due to physical deterioration within the reasonable control of the owner.

The statute precludes consideration of an increase or a decrease in the value of the property caused by the project.  
See Leevers
, 552 N.W.2d at 375.  This type of statutory provision is generally known as the “project rule” or “project influence rule,” and it recognizes when the government announces a public improvement the value of property in the vicinity of the improvement often increases or decreases before the actual taking due to the improvement.  29A C.J.S. 
Eminent Domain 
§ 140 (2017).  When there is a decrease in the value of the property, the rule “promotes fairness in valuing property by . . . protecting the property owner from the injustice of assessing against it a diminution in the property’s value caused by the same project for which it is being taken.”  
Id
.

[¶18] Although the statute requires the district court disregard any increase or decrease in the value of the property caused by the project in determining compensation for the taking, it does not preclude consideration of all evidence related to or acquired through the project.  The Barr report was commissioned by the District for the project, but the report contained information about the physical condition of the properties.  Any decrease in the value of the properties based on the information obtained in the report was not caused by the project; rather, it was caused by the condition of the properties, which existed whether or not the project was completed. The Barr report contained evidence about the actual physical condition of the properties and N.D.C.C. § 32-15-06.1(3) did not preclude the court from considering this information.

[¶19] However, the district court specifically stated it was not appropriate to consider evidence based on the Barr report because it was unlikely the average knowledgeable buyer would have commissioned a similar report.  The district court has broad discretion on evidentiary matters.  
See Linstrom v. Normile
, 2017 ND 194, ¶ 7, 899 N.W.2d 287.  The probative effect and admissibility of evidence is a matter for the trial court’s discretion.  
Mosser v. Denbury Res., Inc.
, 2017 ND 169, ¶ 30, 898 N.W.2d 406.  The court did not consider the evidence about the condition of the properties obtained from the Barr report to determine the value of the properties.  Instead, the court considered evidence about what a knowledgeable buyer would know, including:

1) The City of Oxbow flooded in 2009.

2) Houses on the Red River had been bought out since the floods of 2009 and 2011.

3) A knowledgeable buyer would notice soil stability problems with the property.

4) A knowledgeable buyer would know that corrective measures for soil stability problems are expensive and would request expert advice on where a structure can be built.

5) The physical characteristics of the subject property and the conditions which lead to the determination that the soil conditions were unstable which would make building a home on the subject property a risky venture all existed prior to the date of taking.

The court specifically found, “Irrespective of the project the generally known conditions and past flooding greatly reduced the market value of the property from the date it was acquired by the Ericksons to the date of taking.”

[¶20] Evidence established the Ericksons attempted to sell the properties before the 2009 flood for approximately $100,000 per lot, but did not receive an acceptable offer for either lot.  Evidence, including a June 2010 letter from an attorney representing the Ericksons to the mayor of the City of Oxbow, established the Ericksons were aware of a problem with the soil stability and the letter stated the damage to the lots “results in the Lots being of questionable value.”  The court properly considered the evidence about the condition of the properties.  The court did not rely on evidence of project influence on valuation.

[¶21] The district court properly found the value of the properties at the time of the taking, and the evidence supports the court’s findings.  The court’s damages award is within the range of evidence and is not clearly erroneous.

III

[¶22] The District argues the district court misapplied the law by awarding the Ericksons the full amount they requested for attorney fees and costs.  The District contends under 
City of Bismarck v. Thom
, 261 N.W.2d 640 (N.D. 1977), a court may not award attorney fees and costs in an eminent domain action when the recovery is less than the offered compensation.  The District claims it offered the Ericksons $150,000 for the two lots together on February 3, 2016, the court only awarded $48,200 for both lots, and therefore, the court erred by awarding attorney fees and costs.

[¶23] This Court reviews awards of attorney and expert fees for an abuse of discretion.  
City of Medora v. Golberg
, 1997 ND 190, ¶ 18, 569 N.W.2d 257.  The district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.  
Id.

[¶24] Section 32-15-32, N.D.C.C., governs awards of attorney fees and costs in eminent domain actions, and provides:

The court may in its discretion award to the defendant reasonable actual or statutory costs or both, which may include interest from the time of taking . . . , costs on appeal, and reasonable attorney’s fees for all judicial proceedings.  If the defendant appeals and does not prevail, the costs on appeal may be taxed against the defendant.  In all cases when a new trial has been granted upon the application of the defendant and the defendant has failed upon such trial to obtain greater compensation than was allowed the defendant upon the first trial, the costs of such new trial shall be taxed against the defendant.

[¶25] The District argues 
Thom
, 261 N.W.2d 640, requires a two-step process for awarding attorney fees and costs in an eminent domain action.  The District contends 
Thom
 requires the district court first determine whether there has been a recovery greater than the amount offered, and if the answer is yes, then the court must evaluate various factors to determine a reasonable fee.  The District claims the court did not comply with either step.

[¶26] In 
Thom
, 261 N.W.2d at 643, this Court said, “under [N.D.C.C. § 32-15-32,] once the recovery is greater than the amount offered from which the appeal is taken reasonable attorney fees are allowable without regard to the amount recovered in excess of the offer.”  The 
Thom
 dissent further stated:

In plain language, the statute, together with the remainder of the holding of the majority, means that if the landowner is unsuccessful in getting an award of more than the offer of the taking agency, he gets no attorney fees, while if he is successful, he gets attorney fees based primarily upon hourly rates.

Id.
 at 650.  This Court has not discussed this portion of the 
Thom
 opinion in any subsequent cases and the issue has not been raised in any case in which attorney fees or costs were awarded when the offer was greater than the recovery awarded.  

[¶27] However, in 
Gissel v. Kenmare Twp.
, 512 N.W.2d 470, 475 (N.D. 1994), an argument similar to the one the District is currently making was raised when the recovery awarded was the same amount as the offer from the taking agency.  In 
Gissel
, at 472-73, the township offered the landowners $3,400 as compensation for damages to their property, the landowners sued the airport and township for inverse condemnation, the jury awarded the landowners $3,400 as just compensation, the landowners were also awarded costs and attorney fees, and the airport appealed.  The airport argued the landowners were required to pay their own costs and attorney fees under N.D.R.Civ.P. 68(a) because they did not receive a more favorable jury verdict than the prior offer of settlement.  
Gissel,
 at 475.  This Court held N.D.R.Civ.P. 68 did not apply because it conflicted with N.D.C.C. § 32-15-32, which specifically addressed costs in eminent domain proceedings and applied to the inverse condemnation action.  
Gissel
, at 476-77.  The Court explained N.D.C.C. § 32-15-32 outlined limited circumstances for shifting costs to a landowner, but it was silent about shifting costs when there was a refusal of an offer of settlement.  
Gissel
,
 
at 476.  The Court also noted in 1981 there was a proposed amendment to N.D.C.C. § 32-15-

32 to authorize an award of “litigation expenses” to the landowner in certain situations, including when a condemnation award exceeded the condemnor’s offer by a specified amount.  
Gissel
, at 476.  The Court said:

The Legislature did not adopt that proposed amendment to Section 32-

15-32, N.D.C.C.  Although the legislative history does not explain the reason for that action, the rejection of that proposed amendment limits cost shifting in eminent domain proceedings to those specific situations already delineated in Section 32-15-32, N.D.C.C., regardless of negotiations or offers of settlement.

Gissel
, at 477.

[¶28] An award of attorney fees and costs in an eminent domain action is governed by N.D.C.C. § 32-15-32. Section 32-15-32, N.D.C.C., gives the court discretion to award costs and attorney fees to the defendant in an eminent domain action.  The plain language of the statute does not limit the authority of the court to award costs and fees only to cases in which the award is greater than the offer.  As this Court explained in 
Gissel
, the legislature rejected an amendment to N.D.C.C. § 32-15-32 that would require the landowner receive a compensation award from the court that was greater than the offer from the condemnor for the landowner to be able to recover their attorney fees and costs.  To the extent 
Thom
 can be read to require that the compensation awarded in an eminent domain action must be greater than the amount offered before attorney fees and other costs may be awarded under N.D.C.C. § 32-15-

32, it is overruled.

[¶29] In deciding whether to award attorney fees and costs in an eminent domain case, the district court should consider the following factors:

[I]n determining a reasonable fee the trial judge must first determine the number of hours expended.  Whenever possible his findings should be made upon contemporaneous records, and when such records are not available, then upon reasonable reconstruction or estimates of time amounts.  The trial judge must then assign specific hourly rates based upon the attorney’s experience and reputation which will constitute the “lodestar.”  The hourly rate can be adjusted upwards or downwards on the basis of objective evaluation of the complexity and novelty of the litigation and the corresponding degree of skills displayed by the attorney.

The trial court or judge should also consider the character of the services rendered, the results which the attorney obtained, and the customary fee charged in the locality for such services, as well as the ability and skill of the attorney.  The court should not rely on any single item in determining reasonable attorney fees.  The number of hours spent in total and the rate per hour are the predominant factors in determining reasonable attorney fees.

Thom
, 261 N.W.2d at 646; 
see also N.D. Dep’t of Transp. v. Schmitz
, 2018 ND 113, ¶ 6, 910 N.W.2d 874.  The 
Thom
 factors should be “fairly weighed together.”  
Schmitz
, at ¶ 6.  The district court judge is considered an expert on attorney fees in eminent domain cases.  
Id.
 at ¶ 9.

[¶30] The Ericksons requested $125,884.66 for attorney fees, expert witness fees, and other costs.  The Ericksons presented itemized bills from their attorney and evidence of other fees and costs, including the expert witness fees.  The district court considered the 
Thom
 factors and made findings.  The court found the Ericksons were required to incur additional costs because the District commissioned the Barr report, an average knowledgeable buyer would not have commissioned that type of report in the process of acquiring the property, and there were additional costs because the District commissioned the report, including attorney fees necessary for counsel to be knowledgeable about geotechnical reports and the hiring of an engineer to analyze the report.  The court also found the case was more complex than the court anticipated because of the large discrepancy in the alleged value of the properties and the Barr report.  The court found the amount of time Ericksons’ counsel spent on the case was reasonable due to the complexity and the hourly rate charged was reasonable.  The court awarded the Ericksons $76,710.61 for their attorney fees.  The court found fees for an engineering expert were reasonable because the fees were incurred as a result of the information the District provided and the District’s reliance on the Barr report to determine the value of the properties.  The court also awarded the Ericksons $38,239.05 for the costs and fees of their appraiser.  The court awarded the Ericksons $114,346.47 in total for their fees and costs.

[¶31] The District contends it was unreasonable to award the expert witness fees for the Ericksons’ appraiser because the district court did not rely on his testimony in reaching its decision and the court questioned his competency.  The district court has discretion in determining which expert witnesses are necessary at trial and the amount of expert witness fees.  
Thom
, 261 N.W.2d at 647.  The court awarded the Ericksons fees for their appraiser even though the court did not rely on the appraiser’s testimony and evidence in deciding the value of the properties.  The decision whether to award the appraiser’s fees was within the district court’s sound discretion.  
See Thompson v. Schmitz
, 2011 ND 70, ¶ 23, 795 N.W.2d 913.  The court explained its decision to award the expert witness fees even though it did not rely on the expert’s testimony, stating, “While the Court did not rely upon [the appraiser’s] testimony in determining the value of the property, the Court cannot blame the Ericksons for Mr. Wise’s deficient testimony[.]”  The court explained this was a complex case and it did not fault the Ericksons for their appraiser’s “deficient testimony.”  
Cf. Patterson v. Hutchens
, 529 N.W.2d 561, 568 (N.D. 1995), (holding the court abused its discretion by awarding expert witness fees for an expert’s trial preparation because there were pretrial discussions about limiting the number of experts, the expert was not permitted to testify, and the party was aware the expert’s testimony would be repetitious).  The court did not act in an arbitrary, unreasonable, or unconscionable manner by awarding the fees for the expert witness.

[¶32] The district court did not misinterpret or misapply the law and the court did not act in an arbitrary, unreasonable, or unconscionable manner when it decided to award attorney fees and costs.  We conclude the court did not abuse its discretion by awarding fees and costs.

IV

[¶33] We have considered the parties’ remaining arguments and consider them to either be unnecessary to our decision or without merit.  We affirm the judgment.

[¶34] Lisa Fair McEvers

Jon J. Jensen

Jerod E. Tufte

Ronald E. Goodman, S.J.

Gerald W. VandeWalle, C.J.

[¶35] The Honorable Ronald E. Goodman, S.J., sitting in place of Crothers, J., disqualified.